1433-8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHANE W. WORTMAN, individually,       )
and on behalf of all others similarly  )        Civil Action
situated,                              )
                            Plaintiff, )
        v.                             )        No. 1:18-cv-04522
                                       )
LAW OFFICES OF IRA T. NEVEL, LLC,      )
                            Defendant. )

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, LAW OFFICES OF IRA T. NEVEL, LLC ("Defendant"), by and through its

attorneys, James V. Noonan and Robert E. Haney of Noonan & Lieberman, Ltd., in support of its

Motion for Summary Judgment, pursuant to LR56.1 of the United States District Court for the

Northern District of Illinois hereby submits this Statement of Undisputed Material Facts.

### UNDISPUTED MATERIAL FACTS

1.      On March 3, 2006, Plaintiff executed a mortgage in favor of AFN AMRO

Mortgage Group, Inc. (the "Mortgage"). (See Plaintiff's Complaint at ⁋ 15).

2.      Plaintiff defaulted on the loan on October 1, 2016. (See Plaintiff's Complaint at ⁋

19).

3.      In June 2018, the then holder of the loan, U.S. Bank National Association, not in

its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT ("U.S.

Bank"), retained Defendant to commence foreclosure proceedings. (See Declaration of

Defendant attached hereto as Exhibit "1" at ⁋ 6).

4.      On June 18, 2018, Defendant, on behalf of U.S. Bank, sent Plaintiff the letter

("Letter") attached as Exhibit "A" to the Complaint. (Exhibit "1" at ⁋ 7).

1

5.     The Letter was for informational purposes only to provide Plaintiff with important information to avoid the possible foreclosure of his mortgage and possible loss of his home. (Exhibit "1" at ℙ 10).

6.     The Letter was also Defendant's first communication with the Plaintiff and was required by the FDCPA in order to comply with notice requirements of 15 U.S.C. § 1692g(a), the so-called "Mini-Miranda" warnings. (Exhibit "1" at ℙ 10). (See also Defendant's Answers to Plaintiff's Interrogatories #5 – attached hereto as Exhibit #2).

7.     Page 2 of the Letter includes the following language:

> IF YOU ARE CURRENTLY IN A BANKRUPCY PROCEEDING OF HAVE PREVIOUSLY OBTAINED A DISCHARGE OF THE DEBT UNDER APPLICABLE BANKRUPTCY LAW, THIS NOTICE IS FOR INFORMATION ONLY AND IS NOT AN ATTEMPT TO COLLECT THE DEBT, A DEMAND FOR PAYMENT, OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR THAT DEBT. YOU ARE NOT OBLIGATED TO DISCUSS YOUR HOME LOAN WITH THIS OFFICE OR YOUR MORTGAGE LENDER. YOU SHOULD CONSULT WITH YOUR BANKRUPTCY ATTORNEY OR OTHER ADVISOR ABOUT YOUR LEGAL RIGHTS AND OPTIONS.

8.     Attached hereto as Exhibit "3" is a true and correct copy of Plaintiff's Verified Answers to Defendant's Interrogatories.

9.     Exhibit "3" includes the following Interrogatory and Response:

> 13.     Does Plaintiff have any evidence that a significant fraction of the population would be misled by Exhibit A to the complaint?  If so, identify any and all such evidence.
> **RESPONSE:** Plaintiff, himself, was misled.

10.     Exhibit "4" is a true and correct copy of Plaintiff, Shane W. Wortman's deposition transcript.

11.     At his deposition, Shane Wortman stated that he is unaware of anyone, besides himself and his wife, being misled by the Letter (Exhibit "4" at pg. 41).

12.     Besides his own personal opinion, Shane Wortman has no evidence, from any other source, that the Letter is misleading. (Exhibit "4" at pg. 43).

13.     Plaintiffs have no evidence that a significant fraction of the population would be misled by the Letter.

14.     Plaintiffs have offered no extrinsic evidence to support any claim that a significant fraction of the population would be misled by the Letter.

WHEREFORE, Defendant, LAW OFFICES OF IRA T. NEVEL, LLC, hereby presents its Statement of Undisputed Material Facts in support of its Motion for Summary Judgment and hereby respectfully requests that this Honorable Court to grant its Motion for Summary Judgment, enter judgment in its favor and against Plaintiff, and for such other relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/  James v. Noonan
One of the Attorneys for Defendant

James V. Noonan #6200366
Robert E. Haney #6189905
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, IL 60603
312-431-1455
jnoonan@noonanandlieberman.com
rhaney@noonanandlieberman.com

1433-8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHANE W. WORTMAN, individually,          )
and on behalf of all others similarly    )          Civil Action
situated,                                )
                          Plaintiff,     )
         v.                              )          No. 1:18-cv-04522
                                         )
LAW OFFICES OF IRA T. NEVEL, LLC,        )
                          Defendant.     )

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of the foregoing DEFENDANT'S

STATEMENT OF UNDISPUTED MATERIAL FACTS was served by electronic filing with the

clerk of the Court (ECF) on the following parties or their attorneys:

> Mohammed Badwan
> Sulaiman Law Group, Ltd.
> 2500 S. Highland Avenue, Suite 200
> Lombard, IL 60148
> mbadwan@sulaimanlaw.com

on November 16, 2020.                    Respectfully submitted,

                                         By: /s/  James v. Noonan
                                         One of the Attorneys for Defendant

James V. Noonan #6200366
Robert E. Haney #6189905
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, IL 60603
312-431-1455
jnoonan@noonanandlieberman.com
rhaney@noonanandlieberman.com
m

4

1433-8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE W. WORTMAN, individually, | ) | |
| and on behalf of all others similarly | ) | Civil Action |
| situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:18-cv-04522 |
| | ) | |
| LAW OFFICES OF IRA T. NEVEL, LLC, | ) | |
| Defendant. | ) | |

**DECLARATION**

I, Ira T. Nevel, first being duly sworn under penalty of perjury, state the following is true and correct pursuant to 28 U.S.C. § 1746:

1. I am over the age of 21, under no legal disability, and I have personal knowledge of the facts set forth in this Declaration. If called as a witness, I could and would testify to the following:

2. I make this Declaration in support of Defendant's Motion for Summary Judgment.

3. I am an attorney licensed to practice law in the state of Illinois and am familiar with the Fair Debt Collection Practice Act ("FDCPA") §15 USCA 1692 *et. seq.*

4. I am the managing member of Ira T. Nevel. LLC ("Defendant"), defendant in the above captioned lawsuit. I am the managing attorney of the Defendant law firm and am authorized to execute this Declaration.

5. I am in charge of Defendant's compliance department; whose principal function is to comply with all regulations including compliance with the FDCPA.

6. In June 2018, the then holder of Plaintiff's loan, U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT, ("U.S. Bank") retained Defendant to commence foreclosure proceedings.

1

EXHIBIT 1

7. On June 18, 2018 Defendant, on behalf of U.S. Bank, sent Plaintiff the letter ("Letter") attached hereto as Exhibit "A".

8. I am responsible for preparing correspondence(s) to borrowers including notices such as the Letter.

9. I drafted the language contained in the Letter and directed that the Letter be sent to Plaintiff. I drafted said letter in reliance upon, and in compliance with the 'safe harbor' language for letters of this type recommended by the United States 7th Circuit Court of Appeals as outlined in <u>Bartlett v. Heibl</u>, 128 F.3rd 497 (Seventh Circuit 1997) and <u>Thomas v. Simpson and Cybak</u>, 392 F. 3rd 914 (Seventh Circuit 2004). In fact, <u>Heibl</u> twice contains the exact same 'you owe' language complained of herein.

10. The Letter was for informational purposes only to provide Plaintiff with important information to avoid the possible foreclosure of his mortgage and possible loss of his home. The Letter was also Defendant's first communication with the Plaintiff and was required by the FDCPA in order to comply with notice requirements of 15 U.S.C. § 1692g(a), the so-called "Mini-Miranda" warnings.

## **VERIFICATION**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the facts stated in the foregoing Declaration are true and correct.

By: _____

Printed Name: Ira T. Nevel

Dated:  November 12, 2020

# *Law Offices of Ira T. Nevel, LLC*

175 N. FRANKLIN STREET
SUITE 201
CHICAGO, ILLINOIS 60606
TELEPHONE (312) 357-1125
FAX (312) 357-1140
Iranevel@nevellaw.com

June 18, 2018

NICOLE T WORTMAN
SHANE W WORTMAN
24633 LINCOLNWAY ST
PLAINFIELD, IL 60544

Loan # 7600940248

Dear Borrower,

Your mortgage loan has been referred to our office to file a foreclosure complaint. In the event further activity by this office is necessary, I am required to inform you of the following:

As of 06/18/2018, you owe U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT $309,456.68. Because of interest, and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, please write the undersigned or call (312) 357-1125.

You have thirty days from the day you receive this notice to dispute any portion of the debt. If you do not dispute the debt within this thirty-day period, we will assume that the debt is valid. If you notify this office in writing during the thirty-day period that you dispute any portion of the debt, this office will obtain written verification of the debt and will mail that written verification to you.

The law does not require this office to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you. You may receive a summons during the time you have to dispute the debt. The summons is a command from the court, not from this office, and you must follow its instructions even if you dispute the validity or amount of the debt. The advice in this letter also does not affect our relations with the court. As lawyers, we may file papers in the suit according to the court's rules and the judge's instructions.

WORTMAN 000001

# EXHIBIT 1-A

June 18, 2018
Page 2

Further, you may send this office a written request within your 30-day period to dispute the debt and we will provide the name and address of the original lender, if that lender is different from the current creditor.

Sincerely,

**Aaron Nevel**

Law Offices of Ira T. Nevel, LLC

THIS LAW FIRM IS A DEBT COLLECTOR AND WE ARE ATTEMPTING TO COLLECT A DEBT OWED TO OUR CLIENT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THE PURPOSE OF COLLECTING THE DEBT.

WRITTEN REQUESTS SHOULD BE ADDRESSED TO LAW OFFICES OF IRA T. NEVEL, LLC, FAIR DEBT COLLECTION DEPARTMENT, 175 NORTH FRANKLIN, SUITE 201, CHICAGO, ILLINOIS  60606. OUR NORMAL BUSINESS HOURS ARE MONDAY-FRIDAY 8:30 AM TO 5:00 PM.

IF YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY OBTAINED A DISCHARGE OF THE DEBT UNDER APPLICABLE BANKRUPTCY LAW, THIS NOTICE IS FOR INFORMATION ONLY AND IS NOT AN ATTEMPT TO COLLECT THE DEBT, A DEMAND FOR PAYMENT, OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR THAT DEBT. YOU ARE NOT OBLIGATED TO DISCUSS YOUR HOME LOAN WITH THIS OFFICE OR YOUR MORTGAGE LENDER. YOU SHOULD CONSULT WITH YOUR BANKRUPTCY ATTORNEY OR OTHER ADVISOR ABOUT YOUR LEGAL RIGHTS AND OPTIONS.

WORTMAN 000002

1433-8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE W. WORTMAN, individually, | ) | |
| and on behalf of all others similarly | ) | Civil Action |
| situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:18-cv-04522 |
| | ) | |
| LAW OFFICES OF IRA T. NEVEL, LLC, | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWERS TO PLAINTIFF'S INTERROGATORIES**

Defendant, LAW OFFICES OF IRA T. NEVEL, LLC, by and through its attorneys, James V. Noonan, Robert E. Haney and Noonan & Lieberman, Ltd., hereby submits its answers to Plaintiff's Interrogatories as follows.

**INTERROGATORIES**

1.     Please identify the date you first discovered Plaintiff's bankruptcy discharge.

**ANSWER:**     **On or about June 18, 2018.**

2.     Please identify (1) the date the Subject Loan was placed with You for collection and (2) the identity of the entity that placed the Subject Loan with You for collection.

**ANSWER:**     **On or about June 18, 2018 from Rushmore loan Management, servicer for U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT.**

3.     Please identify (1) all actions You took to determine if the Subject Loan was discharged in bankruptcy, and (2) the date You took each action.

**ANSWER:**     **Defendant ordered a Pacer search on or about June 18, 2018.**

4.     Please identify (1) all actions taken by You after You discovered that the Subject Loan was discharged in bankruptcy, and (2) the date You took each action.

**ANSWER:**     **Sent letter on or about June 18, 2018 with appropriate disclaimer and included**

1

EXHIBIT 2

the disclaimer in paragraph 3m of the foreclosure complaint.

5.     Please state the reason You sent Plaintiff the correspondence attached to Plaintiff's Complaint as Exhibit A (Dkt. 4).

**ANSWER:     Subject letter is required under FDCPA and was for informational purposes only.**

6.     Please identify all correspondences You sent to Plaintiff in the relevant time period

**ANSWER:     The June 18, 2018 letter and Defendant also sent the SB56 letter on or about February 27, 2019.**

7.     Please state whether the Subject Loan was in default and/or past due at the time the Subject Loan was placed with You for collection.

**ANSWER:     Yes.**

8.     If you contend that You are not a "debt collector" as defined by 15 U.S.C. §1692a(6), please state the factual and legal basis for Your denial.

**ANSWER:     Defendant is not a debt collector with respect to this matter since, as per the disclaimer, the subject letter was sent for informational purposes only. See case law cited in Defendant's motion to dismiss.**

9.     State the complete factual and legal basis for Your denial in Your Answer to Plaintiff's Complaint to the allegation(s) set forth in Paragraph 40 of Plaintiff's Complaint.

**ANSWER:     The letter was not sent on the date indicated.**

10.     State the complete factual and legal basis for Your denials in Your Answer to Plaintiff's Complaint to the allegations set forth in Paragraphs 51 through 54 of Plaintiff's Complaint. Your answer should identify all facts, persons and documents You consulted prior to answering the allegations in Paragraphs 51 through 54 of Plaintiff's Complaint.

**ANSWER:     As per the disclaimer, the letter was sent for informational purposes only. See case law cited in Defendant's motion to dismiss.**

11.     Identify all Putative Class Members.  In answering this Interrogatory, please provide the name, address, and phone number of each Putative Class Member.

**ANSWER:**     **Defendant objects to this Interrogatory as overly broad and unduly burdensome. Defendant further objects to this request because it requests information that is not relevant to any claim or defense in this action and is not likely to lead to relevant information because this fact is only relevant in the event a class is certified and the Interrogatory is not proportional to the needs of the case. Answering further, and without waiving this objection, Defendant's investigation is on-going.**

12.     Of the individuals identified in Your response to Interrogatory No. 11, please identify the individuals that elected to surrender the underlying collateral in their bankruptcy proceeding.

**ANSWER:**     **Defendant objects to this Interrogatory as overly broad and unduly burdensome. Defendant further objects to this request because it requests information that is not relevant to any claim or defense in this action and is not likely to lead to relevant information because this fact is only relevant in the event a class is certified and the Interrogatory is not proportional to the needs of the case. Answering further, and without waiving this objection, Defendant's investigation is on-going.**

13.     State the number of the Putative Class Members.

**ANSWER:**     **Defendant objects to this Interrogatory as overly broad and unduly burdensome. Defendant further objects to this request because it requests information that is not relevant to any claim or defense in this action and is not likely to lead to relevant information because this fact is only relevant in the event a class is certified and the Interrogatory is not proportional to the needs of the case.  Answering further, and without waiving this objection, Defendant's investigation is on-going.**

14.     Identify all class action lawsuits initiated against You alleging violations of the Fair Debt Collection Practices Act in the last 5 years.  Moreover, please identify how the lawsuits were resolved.  This Interrogatory does not seek the disclosure of any settlement amounts, but it does require You to identify whether a settlement took place.

**ANSWER:**     **Defendant objects to this Interrogatory because it requests information that is not relevant to any claim or defense in this action, is not likely to lead to relevant information and is not proportional to the needs of the case.**

15.     Please state the factual and legal basis for all the affirmative defenses raised in Your

3

Answer to Plaintiff's Complaint.

**ANSWER:** **As per the disclaimer, the letter was sent for informational purposes only. See case law cited in Defendant's Motion to Dismiss. See also the Affirmative Defenses.**

16.     Please identify all cases in which You were found to have violated the bankruptcy discharge injunction (11 U.S.C. §524) in the last years.

**ANSWER:** **Defendant objects to this Interrogatory because it requests information that is not relevant to any claim or defense in this action, is not likely to lead to relevant information and is not proportional to the needs of the case.**

17.     Identify all policies and procedures that support your bona fide error defense.

**ANSWER:** **Defendant, as per 7th Circuit decisions, inserts a disclaimer in letters and foreclosure complaints so as to comply with the FDCPA and avoid violations of the bankruptcy automatic stay. Defendant has FDCPA policies and a checklist.**

18.     For all the policies and procedures that You identified in Your response to Interrogatory No. 17, describe how and when the policies and procedures were implemented in a manner that promotes compliance with consumer protection laws, including bankruptcy laws and the Fair Debt Collection Practices Act.

**ANSWER:** **See FDCPA policies and checklist.**

19.     Please state whether anyone employed by You or associated with You reviewed the language contained in Exhibit A to Plaintiff's Complaint (Dkt. 4) to determine if the language complies with consumer protection statutes, including bankruptcy laws and the Fair Debt Collection Practices Act. If so, please identify the individual and when the individual performed the review.

**ANSWER:** **Ira Nevel.**

20.     If You have modified any of the language contained in Exhibit A of Plaintiff's Complaint (Dkt. 4) in the last 2 years, identify (1) all changes made to the language, and (2) the identity of the individual who was consulted and/or participated in the changes and explain why the changes were made.

**ANSWER:** **The language has been modified. The disclaimer is now in bold and the words "you owe" have been removed.**

21.     State your net worth as of the date you submitted Your responses to the instant discovery requests. In answering this Interrogatory, please refer to the definition of the term "net worth" as set forth in Paragraph 20 of the Definitions and Instructions herein.

**ANSWER:** **Defendant objects to this request as irrelevant because this fact is only relevant in the event a class is certified.**

22.     State your net worth for the calendar years 2017 and 2018. In answering this Interrogatory, please refer to the definition of the term "net worth" as set forth in Paragraph 20 of the Definitions and Instructions herein.

**ANSWER:** **Defendant objects to this request as irrelevant because this fact is only relevant in the event a class is certified.**

23.     Identify the banking institution(s) that maintains Your current operating bank account(s).

**ANSWER:** **Defendant objects to this Interrogatory because it requests information that is not relevant to any claim or defense in this action, is not likely to lead to relevant information and is not proportional to the needs of the case.**

One of the Attorneys for Defendant

James V. Noonan #6200366
Robert E. Haney #6189905
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois 60603
312-431-1455
jnoonan@noonanandlieberman.com
rhaney@noonanandlieberman.com

## VERIFICATION

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the information contained in the foregoing Defendant's Answers to Plaintiff's Interrogatories are true and correct to the best of my knowledge, information and belief.

By: _____

Printed Name: Ira Nevel

Dated: _____11/19/19_____

1433-8

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHANE W. WORTMAN, individually, and on behalf of all others similarly situated, | ) ) ) | Civil Action |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-04522 |
| LAW OFFICES OF IRA T. NEVEL, LLC, | ) ) ) | |
| Defendant. | ) ) | |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the DEFENDANT'S ANSWERS TO

PLAINTIFF'S INTERROGATORIES was served upon the below named parties at said addresses

in a properly addressed, postage pre-paid envelope and deposited same in a U.S. Mailbox at 105 W.

Adams, Chicago, Illinois and via email on November 20, 2019:

> Mohammed Badwan
> Joseph Davidson
> Sulaiman Law Group, Ltd.
> 2500 S. Highland Avenue, Suite 200
> Lombard, IL 60148
> mbadwan@sulaimanlaw.com
> jdavidson@sulaimanlaw.com

Respectfully submitted,

/s/    Robert E. Haney
One of the Attorneys for Defendant

James V. Noonan #6200366
Robert E. Haney #6189905
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois 60603
312-431-1455
jnoonan@noonanandlieberman.com
rhaney@noonanandlieberman.com

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHANE W. WORTMAN, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:18-cv-04522 |
| v. | Honorable Charles R. Norgle |
| LAW OFFICES OF IRA T. NEVEL, LLC, | |
| Defendant. | |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO LAW OFFICES OF**
**IRA T. NEVEL, LLC'S FIRST SET OF INTERROGATORIES**

NOW COMES Plaintiff, SHANE W. WORTMAN ("Plaintiff"), through counsel, hereby

submits the following responses and objections to the First Set of Interrogatories propounded by

LAW OFFICES OF IRA T. NEVEL, LLC as follows:

**<u>INTERROGATORIES</u>**

1. Please identify the full name of each and every person answering these interrogatories.

    **RESPONSE:** Plaintiff, Shane W. Wortman, through undersigned counsel.

2. Identify each and every person with whom the individual answering these interrogatories consulted, was aided, assisted, and furthered by, in connection with the preparation of the answers to these interrogatories.

    **RESPONSE:** Plaintiff, Shane W. Wortman, through undersigned counsel.

3. State Plaintiff's full name, current residence address(es), date of birth and the last four digits of his social security number.

    **RESPONSE:** Plaintiff's full name is Shane W. Wortman. Plaintiff's current residence

    address is 25804 Ross Lane, Plainfield, Illinois 60585. Plaintiff's date of birth is August

    11, 1975.  Plaintiff's last four digits of his social security number are 5233.

EXHIBIT 3

4.      Describe all communication between Plaintiff, or someone acting on his behalf, and Defendant, including dates of each communication, participants and substance of each communication.

**RESPONSE:** Plaintiff objects to this Interrogatory on the basis that Defendant is in possession of the information it is seeking as part of business records relating to debt it sought to collect. Accordingly, Defendant is in better position to possess this information sought. Subject to and without waiving the foregoing objection, *see* Wortman 000001-000002, Defendant's June 18, 2018 correspondence to Plaintiff. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.

5.      Is Plaintiff claiming that he incurred actual damages as a result of the allegations contained in the Complaint? If yes, explain what the actual damages are.

**RESPONSE:** Plaintiff claims he suffered confusion/emotional distress associated with having to question whether bankruptcy had any effect.

6.      Identify the names and addresses of all persons with whom Plaintiff, or someone acting on his behalf, has communicated regarding the allegations made in the Complaint, and state the date and substance of each such communication.

**RESPONSE:** Plaintiff objects to this Interrogatory to the extent it is seeking information protected by attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objection, Plaintiff states that he has not communicated regarding the allegations made in the Complaint with anyone other than with anyone other than Nicole T. Wortman. Nicole T. Wortman's current residence address is 25804 Ross Lane, Plainfield, Illinois 60585

7.      Identify the names and addresses of all persons who may have knowledge regarding the allegations in the Complaint and state the substance of each person's knowledge.

**RESPONSE:** Plaintiff Shane W. Wortman has knowledge regarding the allegations in the Complaint. Moreover, Nicole T. Wortman has knowledge regarding the allegations in the Complaint.

8.     Has Plaintiff filed for bankruptcy protection in the last ten (10) years? If yes, provide the case number and jurisdiction for each such filing including the dates each such bankruptcy was discharged.

**RESPONSE:** On November 30, 2016, Plaintiff filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. 1:16-bk-37931 (Bankr. N.D. Ill.). On September 11, 2017, Plaintiff was granted a discharge under section 1328(a) of the United States Bankruptcy Code.

9.     List the subsections of the FDCPA that you contend Defendant has violated.

**RESPONSE:** 15 U.S.C. §§ 1692e(2) and e(10).

10.    For each response to interrogatory #9, list the date of the violation and describe the conduct by Defendant that constituted the violation.

**RESPONSE:** *See* Complaint generally. On June 18, 2018, Defendant mailed Plaintiff written correspondence falsely representing Plaintiff owed $309,456.68. However, Plaintiff's discharge by operation eliminated Plaintiff's personal liability on indebtedness owed U.S. Bank, N.A.

11.    Does Plaintiff allege in the complaint that Defendant violated 15 U.S.C. § 1692e(2)? If so, identify the entire basis for this allegation and all such evidence which supports the allegation.

**RESPONSE:** *See* Complaint ¶ 51.

12.    Does Plaintiff allege in the complaint that Defendant violated 15 U.S.C. § 1692e(10)? If so, identify the entire basis for this allegation and all such evidence which supports the allegation.

**RESPONSE:** *See* Complaint ¶ 52.

13.    Does Plaintiff have any evidence that a significant fraction of the population would be misled by Exhibit A to the complaint? If so, identify any and all such evidence.

**RESPONSE:** Plaintiff, himself, was misled.

14.    Identify any and all experts and/or entities you may seek to use in an attempt to provide evidence (of any kind) that Defendant allegedly violated the FDCPA.

3

**RESPONSE:** Plaintiff objects to this Interrogatory as premature at this juncture. Subject to and without waiving the foregoing objection, Plaintiff states he has not retained an expert; doesn't expect to retain an expert; however, reserves the right to retain an expert, if necessary. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.

15. Has Plaintiff ever been a party to any lawsuit? If so, list the name, court number, jurisdiction and outcome for all such lawsuits, including any settlement terms.

**RESPONSE:** Plaintiff objects to this Interrogatory on the basis that the information sought is immaterial to his claims against Defendant and thus disproportionate to the needs of this case. Plaintiff further objects on the basis that any lawsuits that Plaintiff has been a party to is public knowledge; therefore, Defendant has equal access to the information it is seeking.

16. Has Plaintiff ever been convicted of:

    a.    A crime punishable by imprisonment in excess of 1 year, or

    b.    A crime involving dishonesty, fraud or false statement?

If yes, please list the case name, number, jurisdiction and outcome.

**RESPONSE:** None.

17. List all witnesses Plaintiff intend to call at trial.

**RESPONSE:** Plaintiff objects to this Interrogatory as premature at this juncture. Subject to and without waiving the foregoing objection, Plaintiff states he will submit his witness list when necessary. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.

18. Please identify any compensatory damages Plaintiff seeks if any.

**RESPONSE:** Plaintiff objects to this Request to the extent it is seeking documents protected by the attorney-client privilege and/or work product doctrine. Plaintiff further objects to this Request on the basis that the information sought is immaterial to whether

4

Defendant's conduct violated the FDCPA. Accordingly, the information sought regarding attorney's fees, litigation expenses, and costs is disproportionate to the needs of the case at this juncture. Plaintiff will submit his attorney's fees application to the Court if he prevails on his FDCPA claims. Plaintiff's investigation continues and Plaintiff reserves the right to supplement this response.

19.    State the complete terms of engagement you have with each attorney representing you in this Complaint.

   **RESPONSE:** Plaintiff objects to this Interrogatory to the extent it is seeking information by the attorney-client privilege and/or work product doctrine.

Dated: August 22, 2019                    Respectfully submitted,

                                          */s/ Joseph S. Davidson*

                                          Joseph S. Davidson
                                          Mohammed O. Badwan
                                          **SULAIMAN LAW GROUP, LTD.**
                                          2500 South Highland Avenue
                                          Suite 200
                                          Lombard, Illinois 60148
                                          +1 630-575-8181
                                          jdavidson@sulaimanlaw.com
                                          mbadwan@sulaimanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

       I, Joseph S. Davidson, an attorney, certify that on August 22, 2019, I caused the foregoing **PLAINTIFF'S RESPONSES AND OBJECTIONS TO LAW OFFICES OF IRA T. NEVEL, LLC'S FIRST SET OF INTERROGATORIES**, to be served upon counsel of record, as listed below, via email:

James V. Noonan
Robert E. Haney
**NOONAN & LIEBERMAN, LTD.**
105 West Adams Street, Suite 1800
Chicago, Illinois 60603
312-431-1455
jnoonan@noonanandlieberman.com
rhaney@noonanandlieberman.com
intake@noonanandlieberman.com

*/s/ Joseph S. Davidson*

## VERIFICATION

I, Shane W. Wortman, declare under penalty of perjury that I have read the foregoing responses contained in Plaintiff's Responses to Defendant's Interrogatories, and that the answers set forth therein are truthful to best of my knowledge, information and belief.

Executed on August 22, 2019.

DocuSigned by:

7F3B180F3017485...

Shane W. Wortman

Transcript of the Testimony of
# SHANE W. WORTMAN

**Date:** November 22, 2019

**Case:** SHANE W. WORTMAN v. LAW OFFICES OF IRA T. NEVEL, LLC.

**TOOMEY REPORTING**

312-853-0648
toomeyrep@sbcglobal.net
www.toomeyreporting.com

EXHIBIT 4

SHANE W. WORTMAN
November 22, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHANE W. WORTMAN, INDIVIDUALLY )
AND ON BEHALF OF ALL OTHERS      )
SIMILARLY SITUATED,              )   Civil Action
                  Plaintiff,     )
                                 )
          -vs-                   )   1:18-cv-04522
                                 )
LAW OFFICES OF IRA T. NEVEL,     )
LLC,                             )
                  Defendant.     )


          Deposition of SHANE W. WORTMAN taken
before NANCY K. SPEARE, C.S.R., and Notary
Public, pursuant to the Federal Rules of Civil
Procedure for the United States District Courts
pertaining to the taking of depositions, at 2500
South Highland, Suite 200, Lombard, Illinois
at 9:53 a.m. on the 22nd of November, A.D.,
2019.
          There were present at the taking of
this deposition the following counsel:

SHANE W. WORTMAN
November 22, 2019

Page 2

1        ATLAS CONSUMER LAW by
           MR. JOSEPH S. DAVIDSON
2        2500 South Highland Avenue
           Suite 200
3        Lombard, Illinois 60148
           (630) 575-8181 ext. 116
4        jdavidson@sulaimanlaw.com,
5              on behalf of the Plaintiff;
6        NOONAN & LIEBERMAN by
           MR. ROBERT E. HANEY
7        105 West Adams Street
           Suite 1800
8        Chicago, Illinois 60603
           (312) 431-1455
9        rhaney@noonanandlieberman.com,
10            on behalf of the Defendant.
11
12
13
14
15
16
17
18
19
20
21
22
23
24

TOOMEY REPORTING
312-853-0648

**SHANE W. WORTMAN**
**November 22, 2019**

Page 3

1                     DEPOSITION OF

2               SHANE W. WORTMAN

3           Taken:  November 22, 2019

4

5  EXAMINATION BY                        PAGE

6  Mr. Haney                         4
                                    55

7

  Mr. Davidson                     51

8

9

10                  EXHIBITS
                                  PAGE

11  Exhibit No. 1                 12

12  Exhibit No. 2                 18

13  Exhibit No. 3                 28

14  Exhibit No. 4                 45

15  Exhibit No. 5                 46

16

17

18

19

20

21

22

23

24

**SHANE W. WORTMAN**
**November 22, 2019**

Page 4

1           SHANE W. WORTMAN,

2   called as a witness herein, having been first

3   duly sworn, was examined upon oral

4   interrogatories and testified as follows:

5                   EXAMINATION

6               by Mr. Haney:

7       Q   Okay, let the record reflect that this is

8   the deposition of Shane Wortman taken pursuant to

9   notice and continued to today's date by agreement

10  of the parties; and let the record also show that

11  this deposition will be taken in accordance with

12  the applicable rules, federal rules of Civil

13  Procedure, and the local rules of the Northern

14  District of Illinois, excuse me.

15          Mr. Wortman, my name is Bob Haney.  I

16  introduced myself to you before we went on the

17  record here today.  I'm going to be asking you

18  some questions about a lawsuit that's pending in

19  federal court for the Northern District of

20  Illinois involving a letter dated June 18th of

21  2018.  So, for purposes of this deposition I'm

22  going to call it "the letter", is that okay?

23      **A   That's okay.**

24      Q   All right.  If at any time you don't hear

**SHANE W. WORTMAN**
**November 22, 2019**

Page 5

1   one of my questions or don't understand one of my

2   questions, let me know; and I will repeat myself

3   or rephrase my question as is necessary.  Do you

4   understand?

5       **A    I do.**

6       Q    All right, tell us your full name then

7   for the record.

8       **A    Shane William Wortman.**

9       Q    And where do you live?

10      **A    At 25804 Ross Lane, Plainfield, Illinois.**

11      Q    And how long have you lived there?

12      **A    About a year and a half now, a year ago**

13   **this last August, so come -- in a couple months,**

14   **I'm sorry.**

15      Q    And who do you reside with at that

16   address?

17      **A    My wife, Nicole; my son, Shane; my**

18   **daughter, Jade; my father, Richard.**

19      Q    And what is your date of birth?

20      **A    8-11-75.**

21      Q    What are the last four digits of your

22   social?

23      **A    5233.**

24      Q    Have you ever given a deposition before?

SHANE W. WORTMAN
November 22, 2019

Page 6

1   **A    I have.**

2   Q    How many times?

3   **A    One other time.**

4   Q    And when was that?

5   **A    About 20 years ago.**

6   Q    What was the nature of that case?

7   **A    Related to an auto accident.**

8   Q    Were you the plaintiff?

9   **A    Yes.**

10  Q    An injury case?

11  **A    Yes.**

12  Q    Have you ever testified at trial?

13  **A    No.**

14  Q    Okay, I realize you've given a deposition

15  once before; but, since it was 20 years ago, I

16  just want to just briefly cover some of the

17  ground rules for the deposition today.  I pretty

18  much already covered them; but, if you need to

19  take a break for any reason we'll be happy to do

20  that for you, accommodate you; but the only thing

21  I would request is you not take a break while

22  you're in the middle of answering a question --

23  **A    Finish questions before?**

24  Q    Yeah.  And, of course, you just sort of

SHANE W. WORTMAN
November 22, 2019

Page 7

1   telegraphed it, you need to let me finish

2   completely asking questions before you start to

3   answer so our court reporter can get a clean

4   record; and then I'll try not to step on one of

5   your answers as well.  Okay?

6       A    I understand.

7       Q    Do you have any questions about the

8   proceedings so far?

9       A    No.

10      Q    Okay.  Did you review any documents

11  before starting the deposition here today?

12      A    I did, I reviewed them myself and with my

13  attorney.

14      Q    What did you look at?

15      A    The complaint itself, the letter I

16  reviewed, and some other jurisdictional documents

17  that were forwarded that I've had on file.

18      Q    And what are these jurisdictional

19  documents?

20      A    Is it okay if I look on my phone?

21      Q    Sure --

22      A    I've got them pulled up --

23      Q    -- absolutely.

24      A    So I can actually -- The complaint

SHANE W. WORTMAN
November 22, 2019

Page 8

1    itself, the interrogatories.

2        Q    Those are the interrogatories that you

3    executed?

4        A    Yes.

5        Q    Okay.

6        A    And the actual complaint.

7        Q    Okay.  So the letter, the interrogatory

8    answers, and the complaint?

9        A    Yes.

10       Q    Does that cover it?

11       A    Yes.

12       Q    Did you discuss the deposition with

13   anyone before we started up here today?

14       A    Yes, with my attorneys.

15       Q    You spoke with Mr. Davidson?

16       A    Yes.

17       Q    And with Mr. Badwan?

18       A    Yes.

19       Q    And when did you do that?

20       A    This morning.

21       Q    And how much time did you spend doing

22   that?

23       A    Maybe 20, 30 minutes.

24       Q    Did you do anything else -- Strike that.

SHANE W. WORTMAN
November 22, 2019

Page 9

1           Did you do anything else to prepare for

2   the deposition?

3      **A   I've reviewed the documents myself in**

4   **preparation for the deposition just over this**

5   **last week knowing that we were going to be**

6   **meeting today.**

7      Q   Are you married?

8      **A   I am.**

9      Q   Your wife is Nicole?

10     **A   Yes.**

11     Q   How long have you been married?

12     **A   Just had a 19-year anniversary.**

13     Q   Congratulations.

14     **A   Thank you.**

15     Q   And I think you told me you had a son

16  Shane?

17     **A   I do.**

18     Q   Are you employed?

19     **A   I am.**

20     Q   Where do you work?

21     **A   I work for Comforts of Home Services,**

22  **Incorporated.**

23     Q   And where is that located?

24     **A   Aurora, Illinois.**

SHANE W. WORTMAN
November 22, 2019

Page 10

1    Q    That's a commute.  What's the address?

2    A    410 Rathbone Avenue, R-A-T-H-B-O-N-E,

3    Avenue, 60506.

4    Q    And what do you do there?

5    A    I'm a director of sales and marketing.

6    Q    And how long have you worked there?

7    A    A year, seven months.

8    Q    What's the nature of their business?

9    A    We build custom restroom shower

10   decontamination trailers --

11        THE COURT REPORTER:  I'm sorry, you "build

12   custom"?

13        THE WITNESS:  A  Custom restroom and shower

14   event trailers for use at wedding events,

15   concerts, industrial use with the government

16   along the border, overseas, military bases.

17        MR. HANEY:  Q  And where did you work before

18   that?

19        THE WITNESS:  A  Factory Cleaning Equipment.

20   Q    And where are they located?

21   A    Also in Aurora, Illinois.

22   Q    And how long did you work for Factory

23   Cleaning Equipment?

24   A    About six years.

SHANE W. WORTMAN
November 22, 2019

Page 11

 1    Q   And I think I can tell from the title,
 2  but what is the nature of their business?
 3    **A   Actually equipment sales, industrial**
 4  **equipment sales.**
 5    Q   What is your highest level of education?
 6    **A   High school grad.**
 7    Q   What high school did you graduate from?
 8    **A   Morton East High School in Berwyn,**
 9  **Illinois.**
10    Q   And when did you graduate?
11    **A   1993.**
12    Q   Have you had any education post high
13  school?
14    **A   No.**
15    Q   So you haven't taken any college courses
16  of any kind?
17    **A   None.**
18    Q   Do you have any professional licenses of
19  any kind?
20    **A   No.**
21  MR. HANEY:  That's for you.
22          (counsel handed opposing
23           counsel a document)
24  MR. HANEY:  Would you mark this as Number 1.

SHANE W. WORTMAN
November 22, 2019

Page 12

1      (document marked as requested)

2      MR. HANEY:  Q   Mr. Wortman, showing you

3  what's been marked as Deposition Exhibit Number

4  1, do you have that document in front of you?

5      THE WITNESS:  A   Yes.

6      Q   This is a document entitled Notice of

7  Deposition, correct?

8      **A   Yes.**

9      Q   And it has five pages, is that true?

10     **A   Yes.**

11     Q   The part of the Notice of Deposition

12  includes a rider, starting on the second page,

13  correct?

14     **A   Correct.**

15     Q   Have you seen this Notice of Deposition

16  before?

17     **A   I have.**

18     Q   Okay, this is for a date of October 30th

19  of 2019, which is obviously not correct; but the

20  date was continued to today by everyone's

21  agreement?

22     **A   Right.**

23     Q   Mainly to accommodate you, since it would

24  have been a trek for you to come downtown.

SHANE W. WORTMAN
November 22, 2019

Page 13

1      Have you had an opportunity to look at

2  the rider before?

3    **A    I've reviewed it previously.**

4    Q    Okay, I want to go through just a few of

5  the numbered items on here just to see if there

6  are any documents.  You brought some documents

7  with you today, the ones you looked at on your

8  phone I guess and the ones that are in front of

9  you on the table today, right?

10   **A    Yes.**

11   Q    And the ones on the table are what

12  exactly, that you brought?

13   **A    I brought the complaint itself and a copy**

14  **of the original letter.**

15   Q    Okay.  And at some point in time did you

16  give documents to your attorney?

17   **A    I did.**

18   Q    Okay, and did you give all the documents

19  to your attorney that you think are relevant to

20  the lawsuit?

21   **A    I did.**

22   Q    And what were those documents?

23   **A    The letter that we received.**

24   Q    And did you give them anything else?

SHANE W. WORTMAN
November 22, 2019

Page 14

1   **A**   **No.**

2   Q   Okay, item number two on the rider asks

3   for all documents relating to any communication

4   between you and the defendant, who's the Law

5   Offices of Ira T. Nevel, correct?

6   **A**   **Correct.**

7   Q   And you mentioned "the letter", right?

8   **A**   **Yes.**

9   Q   Are there any other letters that you

10  received from Mr. Nevel's office?

11  **A**   **No.**

12  Q   Did you mail any documents to Mr. Nevel?

13  **A**   **No.**

14  Q   Okay, moving down the line, number four,

15  asks about tape recordings, among other things.

16  Did you have any phone conversations with

17  Mr. Nevel or his law office?

18  **A**   **No.**

19  Q   So it's fair to say you don't have any

20  recordings of any phone calls, right?

21  **A**   **No.**

22  Q   What I said was correct?

23  **A**   **Correct.**

24  Q   Okay.  I'm moving on to page 3, it talks

SHANE W. WORTMAN
November 22, 2019

Page 15

1    about documents relating to your claims; and it

2    says "any and all documents that relate to

3    plaintiff's claim for actual damages, statutory

4    damages, attorneys' fees, litigation expenses,

5    costs, and any other damages plaintiff seeks";

6    did I read that correctly?

7       A    Yes.

8       Q    All right, do you have any documents

9    responsive to this request?

10      A    No.

11      Q    Are you getting bills for attorneys'

12   fees?

13      A    No.

14      Q    Have you ever paid any money in the form

15   of litigation expenses for this lawsuit?

16      A    No.

17      Q    Are you making a claim for any economic

18   damages relating to the lawsuit?

19      A    No.

20      Q    Okay.  Number 13 states "If plaintiff is

21   seeking recovery of damages for any medical

22   condition, including emotional distress, they

23   claimed to have suffered as a result of

24   defendant's alleged conduct, please produce all

**SHANE W. WORTMAN**
**November 22, 2019**

Page 16

1    of your medical records from January 1st, 2015 to

2    the present".  Did I read that correctly?

3        **A    Yes.**

4        Q    Are you making a -- are you seeking

5    recovery for damages for any medical condition?

6        **A    No.**

7        Q    Are you seeking recovery for any

8    emotional distress?

9        **A    No.**

10       Q    Have you ever spoken to a doctor about

11   any medical condition or emotional distress

12   relating to this lawsuit?

13       **A    No.**

14       Q    Do you have a treating physician?

15       **A    Yes.**

16       Q    Who is the treating physician?

17       **A    Dr. Williams, DuPage Medical Group.**

18       Q    And he's a family physician?

19       **A    Yes.**

20       Q    How long have you been seeing him?

21       **A    The last three years.**

22       Q    Do you see him for annual checkups?

23       **A    Yes.**

24       Q    When was the last team you saw him?

SHANE W. WORTMAN
November 22, 2019

Page 17

1    **A    About a year ago.**

2    Q    And what is the address?

3    **A    I see him at 143rd Street and Route 59 in**

4    **Plainfield.**

5    Q    Okay, number 18 -- I'm not reading all of

6    these, obviously.  There's just a few I have

7    interest in.  Eighteen concerns copies of bank --

8    excuse me -- copies of bankruptcy petitions filed

9    by you in the last ten years; do you see that?

10    **A    I do.**

11    Q    And you did file for bankruptcy within

12    the last ten years, correct?

13    **A    I did.**

14    Q    Is it just the one filing?

15    **A    Yes.**

16    Q    And did you receive a discharge?

17    **A    We did.**

18    Q    Do you know the date of discharge?

19    **A    September 11th of 2017.**

20    Q    Okay, and after the discharge were there

21    any further bankruptcy proceedings?

22    **A    No.**

23    Q    Okay, we can put this one aside for the

24    moment.

SHANE W. WORTMAN
November 22, 2019

Page 18

1    Can you mark this as Number 2 for

2  Mr. Wortman.

3    (document marked as requested)

4    MR. HANEY:  Q  Mr. Wortman, I'm showing you

5  what's been marked as your Deposition Exhibit

6  Number 2, which is the Class Action Complaint.

7  Do you see that?

8    THE WITNESS:  A   Yes.

9    Q   And I think you indicated earlier that

10  this is one of the documents that you

11  familiarized yourself with prior to the

12  deposition starting today, is that correct?

13  **A   Yes.**

14    Q   And this Exhibit Number 2 also has as

15  Exhibit A "the letter", correct?

16  **A   Correct.**

17    Q   Okay, I'll spend a couple minutes on

18  this.  Do you understand the complaint?

19  **A   I do.**

20    Q   Okay.  And -- Strike that.

21    The complaint makes reference to the

22  Fair Debt Collection Practices Act, correct?

23  **A   Correct.**

24    Q   Which is sometimes abbreviated F-D-C-P-A,

SHANE W. WORTMAN
November 22, 2019

                                                    Page 19
1   right?

2       A    Right.

3       Q    Are you familiar with the Fair Debt

4   Collection Practices Act?

5       A    **I have an understanding of what it means,**

6   **yes.**

7       Q    What does it mean?

8       A    **Well, it's a protection for citizens**

9   **against debt collections from malicious intent,**

10  **overzealous letters, things like that, and**

11  **basically a practice put in place to protect the**

12  **general public.**

13      Q    And how have you acquired your knowledge

14  of the Fair Debt Collection Practices Act?

15      A    **Through reading the complaint itself and**

16  **through my own research.**

17      Q    Okay.  I want to direct your attention to

18  page 8 of this complaint.  Just tell me when

19  you're there.

20      A    **I'm there.**

21      Q    Okay, paragraph 40 says "On June 15th,

22  2018, Defendant sent Plaintiff a dunning letter,

23  providing"; do you see that?

24      A    **I do.**

SHANE W. WORTMAN
November 22, 2019

Page 20

1    Q    That's a typo, I presume?  Do you agree?

2    **A    I don't understand what a dunning letter**

3    **is myself.**

4    Q    I'm referring actually to the date.  The

5    date says on June 15th; and actually the letter's

6    dated June 18th?

7    **A    June 18th, that is a typo, correct.**

8    Q    So paragraph 40 is incorrect, do you

9    agree, in terms of the date?

10   **A    I agree.**

11   Q    Okay.  Now, paragraph 41 appears to have

12   a section of the letter, true?

13   **A    True.**

14   Q    And that is, I mentioned earlier, the

15   actual letter itself is attached that's Exhibit A

16   to this complaint, correct?

17   **A    A portion of the letter.**

18   Q    Well, let's make sure we're on the same

19   page, literally.  Paragraph 41 is a portion of

20   the letter; and then Exhibit A is an entire

21   letter, is that right?

22   **A    Correct.**

23   Q    Okay.  And I think you told me earlier

24   that this letter is the only letter that you

SHANE W. WORTMAN
November 22, 2019

Page 21

1    received from Defendant, is that correct?

2        A    Correct.

3        Q    Do you find fault with this letter?

4        A    I do.

5        Q    And why do you find fault with the

6    letter?

7        A    Because it was a letter that we received

8    nine months after our discharge from our

9    bankruptcy stating that we owed money to bank --

10   US National Bank -- Bank National Association, I

11   apologize -- in the amount of $309,456 dollars

12   and 68 cents.

13       Q    And why do you find fault with that

14   statement?

15       A    Not only does it say that we owe the

16   money but it goes on to continuing to say --

17   mentions it as a debt that we owe and to collect

18   the debt throughout the body of the letter; and

19   it makes statements related to making deposits of

20   a check once they receive it.  It's pretty

21   descriptive in their intent to try and recover

22   the debt that we had understanding of that was

23   discharged nine months earlier.

24       Q    The letter is dated, as you've stated,

SHANE W. WORTMAN
November 22, 2019

Page 22

1    June 18th of 2018, correct?

2         A    Correct.

3         Q    When did you receive the letter?

4         A    **Based on when it's dated, in my**

5    **recollection I'm going to say a couple days after**

6    **that.  June 18th I believe was on a Monday.  I**

7    **believe we might have received the letter on**

8    **Wednesday or Thursday of that week, possibly the**

9    **20th or 21st.**

10        Q    And that's the correct address where you

11   were residing at the time?

12        A    **Yes.**

13        Q    All right, and was the letter sent by

14   regular mail or certified mail, if you know?

15        A    **I believe it was regular mail.**

16        Q    All right, and when you received this

17   letter in June of 2018 did you read the entire

18   letter?

19        A    **We did.**

20        Q    "We" being you and your wife?

21        A    **Myself and my wife, yes.**

22        Q    All right.  And when you read the entire

23   letter did you also read the language that is

24   contained after the signature on page 2?

SHANE W. WORTMAN
November 22, 2019

Page 23

1    A    What I will say is after the initial

2   shock of the letter set in -- to be honest with

3   you it was devastating to receive the letter --

4   we were floored; and, mainly, because of when it

5   was we made the call immediately of course to our

6   lawyers to make sure --

7      Q    And who were your lawyers that you

8   called?

9      A    Left a message for the office, I was

10  trying to reach Mr. Davidson.

11     Q    Did you know Mr. Davidson from the

12  bankruptcy proceedings?

13     A    Yes, I met him early on in the process.

14     Q    Okay.  All right, let me back up because

15  I'm not sure you answered my question.  What I

16  wanted to know is when you received the letter

17  you told me you read the entire letter, correct?

18     A    Ultimately, yes.  Immediately, no.  We

19  read the body of the letter itself and tried to

20  absorb what it was saying and, of course, flip to

21  the back page; but, of course, it's fine print,

22  it's a disclaimer, and the bulk of it, actually,

23  continued for the further lines, two lines down

24  past the signature line have absolutely nothing

SHANE W. WORTMAN
November 22, 2019

Page 24

1  **to do with the further disclaimer, which of**
2  **course we saw below about currently being**
3  **(inaudible) -- how confusing is that --**
4      THE COURT REPORTER:  "Currently being" a
5  what?
6      THE WITNESS:  A   About -- it has language in
7  it that if you're currently in a bankruptcy
8  proceeding or have previously obtained a
9  discharge, but it's direct contradictory language
10  above in the body of the letter; and we assumed
11  that why would they send us this letter if they
12  weren't actually intending to collect, thinking
13  that the lender themselves should have previous
14  knowledge of our bankruptcy and the discharge.
15  So we're having a misunderstanding of the
16  disconnection between the bank themselves and, of
17  course, the collection.
18      Q   I think you're getting a little bit ahead
19  of me.
20      **A    No problem.**
21      Q   I'll give you an opportunity to explain
22  all of that.
23      **A    Okay.**
24      Q   But right now I just I want to know the

SHANE W. WORTMAN
November 22, 2019

Page 25

1    process here.  You got the letter in June.  You

2    read the first part initially.  It sounds like

3    then you made a call to try and get a hold of

4    Mr. Davidson, is that right?

5        **A    Yes.**

6        Q    Okay.  So when you first received the

7    letter you did not read the disclaimer on the

8    second page, is that right?

9        **A    Not in its entirety initially.**

10       Q    Okay.

11       **A    That did occur the same day.**

12       Q    Oh, later on that day --

13       **A    Yes.**

14       Q    -- you did read the disclaimer?

15       **A    Yes, yes.**

16       Q    And, to be clear, the disclaimer says "if

17   you are currently in a bankruptcy proceeding or

18   previously obtained a discharge of the debt under

19   applicable bankruptcy law, this notice is for

20   information only and is not an attempt to collect

21   the debt"; that's what it says, correct?

22       **A    That is what it says.**

23       Q    Okay.  Were you able to get a hold of

24   Mr. Davidson that day?

SHANE W. WORTMAN
November 22, 2019

Page 26

```
1      A    No.
2      Q    When is the first time that you spoke
3   with Mr. Davidson or anyone from his office?
4      A    I believe it was the following Monday --
5      Q    Okay.
6      A    -- the 26th or so.
7      Q    All right, I'll get back to that.  And
8   keep in mind, I'm not asking you about your
9   conversation with Mr. Davidson -- or any other
10  attorney -- because that's privileged
11  information, okay.  Understood?
12     A    Understood.
13     Q    When you, ultimately, did read the
14  language on page 2, the disclaimer that I read
15  into the record, did you understand that this
16  letter was not an attempt to collect the debt?
17     A    No, we didn't.
18     Q    Despite that language being clearly
19  stated you did not understand that to be the
20  case?
21     A    No.
22     Q    Were you a party to a foreclosure as
23  well?
24     A    Yes.
```

SHANE W. WORTMAN
November 22, 2019

Page 27

1    Q    What is the status of the foreclosure?

2    **A    Completed.**

3    Q    And what was the result?

4    **A    The house was sold at auction, I believe.**

5    Q    And was that this house at 24633

6    Lincolnway Street?

7    **A    Yes.**

8    Q    Who represented you in the foreclosure?

9    **A    Atlas Consumer.**

10   Q    Was that Mr. Davidson or some other

11   attorney from his firm?

12   **A    We worked with a few attorneys from the**

13   **firm, Mr. Davidson included, and Mohammad.**

14   Q    And when was the foreclosure completed?

15   **A    I believe it was completed in February of**

16   **'19, of this year.**

17   Q    And you said the house was sold at

18   auction.  Was that as part of a short sale or was

19   that something different?

20   **A    No, a foreclosure, foreclosure sale, as**

21   **far as I know.  I don't have the entirety of the**

22   **details.**

23   Q    Did you have an attorney in that case?

24   **A    Yes.**

SHANE W. WORTMAN
November 22, 2019

Page 28

```
 1     Q    Who represented you?
 2     A    Atlas Consumer.
 3     Q    All right, you told me that.
 4          Who was the plaintiff?
 5     A    Bank of America.
 6     Q    And do you know who the attorney was who
 7   represented the plaintiff?
 8     A    Not specifically, no.
 9     Q    Was it Mr. Nevel, if you know?
10     A    I do not know.
11   MR. HANEY:  Mark this as Number 3 for
12   Mr. Wortman.
13          (document marked as requested)
14   MR. HANEY:  Q  Mr. Wortman, showing you what
15   we marked as your Deposition Exhibit Number 3 is
16   this a document entitled Plaintiff's Responses
17   and Objections to Law Offices of Ira T. Nevel,
18   LLC's First Set of Interrogatories?
19   THE WITNESS:  A   Yes.
20     Q    All right, and the last page of this
21   exhibit has your signature -- or your electronic
22   signature?
23     A    Yes.
24     Q    That is your electronic signature?
```

SHANE W. WORTMAN
November 22, 2019

Page 29

1      **A    Yes.**

2      Q    And you signed this on August 22nd of

3    2019?

4      **A    Yes.**

5      Q    Is this one of the documents that you've

6    had a chance to take a look at before we started

7    the deposition today?

8      **A    Yes.**

9      Q    All right, and is the information in

10   these interrogatory answers accurate?

11     **A    Yes.**

12     Q    Okay.  I have a question for you about

13   the interrogatory number five on page 2, if you

14   could tell me when you're there.

15     **A    I'm there.**

16     Q    Okay, the question is:  "Is plaintiff

17   claiming that he incurred actual damages as a

18   result of the allegations contained in the

19   complaint?  If yes, explain what the actual

20   damages are."  Did I read that question

21   correctly?

22     **A    Yes.**

23     Q    And the answer here is "Plaintiff claims

24   he suffered confusion slash emotional distress

SHANE W. WORTMAN
November 22, 2019

Page 30

1  associated with having to question whether

2  bankruptcy had any effect."  Did I read that

3  answer correctly?

4      **A    Yes.**

5      Q    All right, you've got the word "confusion

6  slash emotional distress" in this response.  You

7  told me you don't have emotional distress

8  damages.  So I presume we're talking about

9  confusion, is that really what we're talking

10 about here?

11     **A    Well, I would say that we have emotional**

12 **distress related to distress in the household**

13 **itself from the stress on my marriage and my**

14 **kids, my family.**

15     Q    Okay.

16     **A    So none outside the whole household to**

17 **require a doctor's attention so to speak, but**

18 **definite personal attention in our own core group**

19 **in our home.**

20     Q    All right, I'll get to that in a second.

21 It says here in your response that this confusion

22 slash emotional distress is associated with

23 having to question whether bankruptcy had any

24 effect, that's that's what it says, right?

SHANE W. WORTMAN
November 22, 2019

Page 31

1    **A    Yes.**

2    Q    Did the letter have any effect on your

3    bankruptcy?

4    **A    Direct effect, no, not that I'm aware of.**

5    Q    And how did you make that determination?

6    **A    After consulting with my lawyer.**

7    Q    Okay.  So when you were able to consult

8    with your lawyer, Mr. Davidson -- without telling

9    me what exactly was said during that

10   conversation, whatever was said -- alleviated

11   your confusion and emotional distress; is that

12   fair to say?

13   **A    No.**

14   Q    Okay, why is that wrong?

15   **A    It -- we feel like our rights were**

16   **violated by receiving the letter.**

17   Q    Right, but you became aware after your

18   conversation with Mr. Davidson that the letter

19   has no effect on your bankruptcy discharge?

20   **A    It had no direct effect on the bankruptcy**

21   **discharge itself.**

22   Q    Okay.

23   **A    It had a direct effect on how we felt --**

24   Q    Okay --

SHANE W. WORTMAN
November 22, 2019

Page 32

1      **A    -- about the discharge.**

2      Q    All right, and you were aware that the

3  letter had no effect on your bankruptcy discharge

4  when you were able to get on the phone with

5  Mr. Davidson -- I think you said, approximately,

6  June 26th of 2018, correct?

7      **A    We actually confirmed that --**

8      Q    Correct?

9      **A    Correct.**

10     Q    Okay.  All right, so now what I want to

11  know -- 'cause I'm confused -- when you say

12  confusion slash emotional distress, are those two

13  separate things; or is that one thing and you're

14  describing it with a slash?

15     **A    I think it can be considered to be one**

16  **thing in its entirety.**

17     Q    Okay.  All right, so then I must ask you

18  how long did you continue to suffer confusion

19  slash emotional distress associated with

20  receiving the letter?

21     **A    We're still confused today as to why we**

22  **received a letter nine months after the**

23  **bankruptcy was discharged.**

24     Q    All right, so the fact that you have now

SHANE W. WORTMAN
November 22, 2019

Page 33

1    had a chance to read the disclaimer hasn't

2    resolved the confusion?

3        **A    No.**

4        Q    All right, I know you haven't seen a

5    doctor about any confusion or emotional distress;

6    but have you had any physical symptoms of any

7    kind that you attribute to the letter?

8        **A    Not that I can say, no more than overall**

9    **internal strife I guess would be a way to put it.**

10       Q    Okay, has overall internal strife caused

11   you to have any physical symptoms?

12       **A    No.**

13       Q    Okay.  So you're not claiming that you

14   suffered high blood pressure as a result of

15   getting the letter?

16       **A    No.**

17       Q    And you're not claiming that you've been

18   unable to sleep at night as a result of getting

19   the letter, you're not making that claim, are

20   you?

21       **A    We had some lost sleep those first few**

22   **days after receiving it; but, currently, no.**

23       Q    Okay, so if you had any sleeplessness

24   over having receiving the letter it was resolved

SHANE W. WORTMAN
November 22, 2019

Page 34

1   after a couple days?

2       A    Yeah, within a week or so.

3       Q    Okay.  At the time that you received this

4   letter in June of 2018 did you have any other

5   things happening in your life that were causing

6   you emotional distress?

7       A    No.

8       Q    Is your health, generally, good?

9       A    Generally, yes.

10      Q    Did you have a death in the family at

11  around that time?

12      A    No.

13      Q    Have you ever been divorced?

14      A    No.

15      Q    Kids are healthy, your son is healthy?

16      A    Yes.

17      Q    Did you have any emotional distress as a

18  result of the foreclosure proceedings?

19      A    No.

20      Q    Did you have any emotional distress over

21  the bankruptcy proceedings?

22      A    Yes.

23      Q    What was it about the bankruptcy

24  proceedings that caused you emotional distress?

SHANE W. WORTMAN
November 22, 2019

Page 35

1    **A    Having to file bankruptcy, losing our**
2    **home.**
3      Q    That's distressing, right?
4    **A    Yes.**
5      Q    What was the reason why you needed to
6    file bankruptcy?
7    **A    We couldn't afford the second mortgage**
8    **that was due; and, with the market being under**
9    **water as it was, we were unable to make the**
10   **payment.**
11     Q    How long did you have emotional distress
12   related to the bankruptcy itself?
13   **A    Continues today.**
14     Q    Are you suffering any financial
15   ill-effects today as a result of having filed the
16   bankruptcy?
17   **A    No.**
18     Q    So then why is it that today you're still
19   distressed over the bankruptcy itself?
20   **A    Well, I think -- well, I'll say that it's**
21   **distressing to file a bankruptcy and I think that**
22   **there's a social stigma associated with it; and I**
23   **think it's something that society, in general,**
24   **looks down upon, and myself included in that**

SHANE W. WORTMAN
November 22, 2019

Page 36

1   group, it's maybe a sign of weakness in life.
2   But I also know that there's a brighter side to
3   it, obviously.
4       Q   Have you had difficulty obtaining a loan
5   since the bankruptcy?
6       A   **None that I've applied for.**
7       Q   Has it affected your credit?
8       A   **Yes.**
9       Q   Has it adversely affected your credit?
10      A   **Yes.**
11      Q   And in what way has it adversely affected
12  your credit?
13      A   **Reduction in credit score.**
14      Q   Do you know what your credit score is
15  now?
16      A   **I do.**
17      Q   What is it?
18      A   **728.**
19      Q   What was it before the bankruptcy, if you
20  know?
21      A   **653.**
22      Q   But the reduced credit score itself
23  apparently hasn't affected you financially so
24  far, right?

SHANE W. WORTMAN
November 22, 2019

Page 37

1        A    No.

2        Q    It hasn't affected your ability to get

3   the home that you presently live in, right?

4        **A    Yes.**

5        Q    It did?

6        **A    Yeah, we don't own the home that we live**

7   **in currently.**

8        Q    You rent?

9        **A    We rent.**

10       Q    Is that because you felt you couldn't get

11  a loan?

12       **A    Yes.**

13       Q    Did you attempt to get a loan?

14       **A    No.**

15       Q    You just thought it wouldn't work?

16       **A    We've had discussions about it and we've**

17  **made ourselves aware of the rules.  We've**

18  **actually have purchased a few homes.  So we know**

19  **that two years out from the bankruptcy with solid**

20  **credit we can try again, and that's about where**

21  **we are right now.**

22       Q    Okay, but prior to two years after the

23  bankruptcy, as a result of the bankruptcy you

24  thought it would be very difficult to get a loan

Page 38

1  to buy a house?

2      **A    Yes.**

3      Q    Okay, and that's based on your experience

4  of having purchased homes?

5      **A    Yes.**

6      Q    How many homes have you purchased?

7      **A    Three.**

8      Q    This is the third one now where you're

9  living?

10     **A    No, we were -- we're renting.**

11     Q    So three homes prior to the home that

12 you're renting right now?

13     **A    Yes.**

14     Q    So I have a question for you about your

15 response to interrogatory number six, which is on

16 page 2.  Let me know when you're there.

17     **A    I'm there.**

18     Q    I'm not going to read the entire thing;

19 but the response says "plaintiff states he has

20 not communicated regarding the allegations made

21 in the complaint with anyone other than" -- with

22 anyone other than" -- I think that's a

23 duplication there -- "Nicole T. Wortman",

24 correct?

SHANE W. WORTMAN
November 22, 2019

Page 39

1    **A    Correct.**

2    Q    And Nicole you said, of course, is your

3    wife?

4    **A    Correct.**

5    Q    And the Ross Lane address is the location

6    where you presently reside?

7    **A    Correct.**

8    Q    Okay.  You did speak with your attorney

9    though, correct, you've already told me that?

10    **A    Correct.**

11    Q    Okay, so you did speak with your attorney

12    about the allegations made in the complaint?

13    **A    I did.**

14    Q    Okay.  When you received the letter in

15    June of 2018 did you call Ira T. Nevel?

16    **A    No.**

17    Q    Why not?

18    **A    I called my attorney.**

19    Q    But the letter came from Ira T. Nevel,

20    correct?

21    **A    Correct.**

22    Q    And you say you were confused about the

23    letter, right?

24    **A    Right.**

SHANE W. WORTMAN
November 22, 2019

Page 40

1    Q    So why didn't you call Mr. Nevel and ask
2  him to explain it?
3    **A    Because my attorney was handling the**
4  **bankruptcy and the foreclosure case; and I was**
5  **instructed by my attorney to call him if we**
6  **received any letters from any debt collectors for**
7  **any reasons, including any phone calls.  So that**
8  **was my first course of action.**
9    Q    And were you instructed not to contact
10  the sender of any such letter?
11    **A    No.**
12    Q    You just felt that the proper course
13  would be to contact your own attorney and not
14  Mr. Nevel?
15    **A    Yes.**
16    Q    If I could ask you to move along a little
17  bit, we're looking at page 3, number 13, question
18  is "Does plaintiff have any evidence that a
19  significant fraction of the population would be
20  misled by Exhibit A to the complaint?  If so,
21  identify any and all such evidence."  Did I read
22  that correctly?
23    **A    Yes.**
24    Q    All right, and your response "plaintiff,

SHANE W. WORTMAN
November 22, 2019

Page 41

1    himself, was misled", correct?

2        **A    Correct.**

3        Q    All right, do you know anyone else that

4    was mislead by this letter besides yourself and

5    perhaps your wife?

6        **A    No.**

7        Q    Other than your own personal opinion do

8    you have any reason to believe that anyone

9    receiving such a letter would be misled?

10       **A    Yes.**

11       Q    Okay, explain that for me.

12       **A    Well, the way the letter is set up, the**

13   **body of the letter itself on the first page is**

14   **very descriptive in its attempt to collect the**

15   **debt on behalf of the -- their collector, who the**

16   **debt is due, and it goes on to give descriptive**

17   **information related to how it's to be paid and**

18   **how they would continue to pursue the debt**

19   **related to its collection; and it's not until you**

20   **get into the end of the second page there is**

21   **actually fine print disclaimer related to process**

22   **of bankruptcy.  I don't know why that would be**

23   **there and not at the very top of that letter, in**

24   **order to disarm a customer like myself and**

SHANE W. WORTMAN
November 22, 2019

Page 42

1    someone else into not believing that this was

2    intended to do what it actually says, and that is

3    to collect the debt it says that we owed.  It

4    actually goes on to say "debt" more than ten

5    times I believe in the letter itself and that

6    they're going to collect the debt.  I think the

7    average person would read this for exactly what

8    it says on the first page and may glance at the

9    second page initially and, of course, with

10   thorough inspection of course read through it, as

11   any consumer would; but, even reading the last

12   part of the letter, it still led us to believe

13   that we owed the money.

14       Q   Okay, and so that answer that you just

15   gave me -- and you explained very well -- is

16   based upon your personal reading of this letter,

17   correct?

18       A   Correct, mine and my wife's, yes.

19       Q   Yes, that's what I asked you.  It's not

20   based on the advice or opinion of anyone else,

21   correct?

22       A   No, sir.

23       Q   So what I said was right?

24       A   Correct.

SHANE W. WORTMAN
November 22, 2019

Page 43

1    Q    All right.  So, despite your own personal

2   opinion about the letter, you don't have any

3   evidence from any other source that the letter is

4   misleading, is that right, is that fair to say?

5    **A    That's fair to say, yes.**

6    Q    Okay.  Now, I want to ask you about page

7   4, number 18, asks you to identify compensatory

8   damages, if any, that you're seeking.  Do you see

9   that?

10    **A    I do.**

11    Q    Okay, do you know what compensatory

12   damages are?

13    **A    I do.**

14    Q    Okay, and are you seeking compensatory

15   damages?

16    **A    No.**

17    Q    Paragraph -- Strike that.

18          Interrogatory number 19, page 5,

19   "complete terms of engagement you have with each

20   attorney representing you", do you see that?

21    **A    I do.**

22    Q    Do you have a written contract with

23   Mr. Davidson's firm?

24    **A    I do.**

SHANE W. WORTMAN
November 22, 2019

Page 44

1    Q    What are the terms?

2    **A    That they were to represent us throughout**

3    **the bankruptcy foreclosure process and any**

4    **processes or complaints that arose during that**

5    **process.**

6    Q    Is it your understanding that that would

7    include this litigation that we're here talking

8    about today?

9    **A    Yes.**

10   Q    And how are they being compensated?

11   **A    I am unsure.**

12   Q    Do you have a copy of this written

13   agreement?

14   **A    I believe I do, yes.**

15   Q    Is there some reason why you haven't

16   turned it over?

17   **A    I'm sorry?**

18   Q    Is there some reason why you haven't

19   provided it to me?

20   **A    No.**

21   MR. DAVIDSON:  (Inaudible).

22   THE COURT REPORTER:  I'm sorry, counsel?

23   MR. DAVIDSON:  At the advice of counsel we

24   haven't provided it.

SHANE W. WORTMAN
November 22, 2019

Page 45

1    MR. HANEY:  Q   Is that right?

2    THE WITNESS:  A   Correct.

3    Q   This is 4.

4         (document marked as requested)

5    MR. HANEY:  Q  Mr. Wortman, showing you

6  what's been marked as your Deposition Exhibit

7  Number 4, this is a document entitled Plaintiff's

8  Responses and Objections to Law Offices of Ira T.

9  Nevel's -- I'm sorry, I read that wrong.  Let me

10  start again.

11         This is entitled "Plaintiff's Responses

12  and Objections to Law Offices of Ira T. Nevel,

13  LLC's First Set of Requests for Production of

14  Documents".  Did I read it right that second

15  time?

16    **A   Yes.**

17    Q   Okay.  Have you seen this before?

18    **A   I believe so, yes.**

19    Q   I just have a few questions about this

20  one.  First, I have a question about the request

21  number 8 on page 3.

22    **A   I see it.**

23    Q   Okay, and it says "All documents

24  evidencing the fact that plaintiff disputed the

SHANE W. WORTMAN
November 22, 2019

Page 46

1  alleged debt with the defendant.  Response:

2  None".  Is that right?

3      A    Correct.

4      Q    Okay, and I think you've already told me

5  this; but it's true that you never sent any kind

6  of a letter, communication, or made any phone

7  call to Ira T. Nevel about the letter, right?

8      A    Correct.

9      Q    Okay.  So, of course, there are no such

10  documents then, right?

11      A    Correct.

12      Q    This is Number 5.

13          (document marked as requested)

14  MR. HANEY:  Q   I'm going to ask you to look

15  at 4 and 5 sort of side by side.  Okay,

16  Mr. Wortman, looking at -- first of all, going

17  back to Exhibit Number 4 again, if you would, the

18  response to the request number one references

19  "Wortman 1 through 59".  Do you see that?

20      A    Yes.

21      Q    Okay.  And if you look at Exhibit Number

22  5 at the bottom right there are these numbers

23  that we attorneys called Bates stamped numbers.

24      A    I see them.

SHANE W. WORTMAN
November 22, 2019

Page 47

1    Q    And you see the documents which comprise
2  Exhibit Number 5 are numbered on the bottom right
3  1 through 59, correct?
4    **A    Correct.**
5    Q    All right, is it your understanding then
6  that Exhibit 5 are the documents that were
7  produced to my law firm in response to the
8  request for production of documents?
9    **A    Yes, that appears to be the case.**
10   Q    Okay, and the documents filed in Exhibit
11  Number 5 include at pages 1 and 2 the letter,
12  right?
13   **A    Correct.**
14   Q    And then thereafter is your bankruptcy
15  petition, correct?
16   **A    Correct.**
17   Q    You recognize the documents 3 through 59
18  as being documents related to your bankruptcy
19  filing?
20   **A    I do.**
21   Q    Okay.  So now if I could direct your
22  attention to, back to Exhibit Number 4, request
23  number 11.  Are you there?
24   **A    I'm there.**

SHANE W. WORTMAN
November 22, 2019

Page 48

1    Q    So I just want to make sure I'm not

2  missing anything here; but request number 11 asks

3  for any and all evidence in your possession that

4  supports or tends to support the proposition that

5  a significant fraction of the population would be

6  misled by Exhibit A to the complaint, is that the

7  request?

8    A    Correct.

9    Q    And your answer is "see Wortman 1 and 2",

10 correct?

11   A    Correct.

12   Q    And Wortman 1 and 2, as we know from

13 Exhibit 5, is the letter, right?

14   A    Correct.

15   Q    So am I right that you don't have any

16 documents to support the allegation that a

17 significant portion of the population would be

18 misled by Exhibit A, the letter, other than the

19 letter itself?

20   A    The letter itself would be the evidence,

21 definitely.

22   Q    And you're not aware of any other

23 documentary evidence other than the letter

24 itself?

SHANE W. WORTMAN
November 22, 2019

Page 49

1      A    Just the letter would be enough.

2      Q    Okay, but I understand your -- I

3  understand your testimony completely I think.

4  You're not aware of any other evidence?

5      A    Not that I'm aware of, no.

6      Q    Okay.  Then Number 13 on that same page

7  if you would.

8      A    I'm there.

9      Q    The request is "If plaintiff is seeking

10 recovery of damages for any medical condition,

11 including emotional distress they claim to have

12 suffered as a result of the defendant's alleged

13 conduct, please produce all of your medical

14 records from January 1st, 2015 to the present".

15 Did I read that right?

16     A    Yes.

17     Q    And your answer is "none", correct?

18     A    Correct.

19     Q    Does the answer "none" mean that you are

20 not seeking recovery of damages for any medical

21 condition, including emotional distress?

22     A    Correct.

23     Q    Okay.  Number 18, page 4.

24     A    I'm there.

SHANE W. WORTMAN
November 22, 2019

Page 50

1    Q    Okay, asks for copies of bankruptcy
2    petitions, right?
3    **A    Correct.**
4    Q    And I'm referenced 1 through 59, correct?
5    **A    Correct.**
6    Q    Actually, as we know, 1 and 2 is the
7    letter?
8    **A    The letter.**
9    Q    And the remaining 3 through 59 would be
10   the bankruptcy petitions, or petition, correct?
11   **A    Correct.**
12   Q    All right, I think I'm just about
13   finished.  I'm just looking over my notes.
14          All right, so I think I have just a
15   couple more questions then.  I don't want you to
16   be offended by this question, but I have to ask
17   everybody who sits across the table from me at a
18   deposition this question:  Have you ever been
19   convicted of a felony?
20   **A    No.**
21   Q    Have you ever been convicted of a
22   misdemeanor involving truth or dishonesty?
23   **A    No.**
24   MR. HANEY:  Okay, I don't have any questions.

SHANE W. WORTMAN
November 22, 2019

Page 51

1    MR. DAVIDSON:  I just have three.

2                     EXAMINATION

3                 by Mr. Davidson:

4    Q   I'd just like you to take a look at

5  Exhibit 2, Exhibit A to the complaint, going back

6  to the letter.

7    **A   I'm there.**

8    MR. HANEY:  Wait, let me get there.  I've got

9  it.

10   MR. DAVIDSON:  Q   Flip the page, the fine

11 print, I'd like you to read the first disclaimer

12 in fine print.

13   THE WITNESS:  A   "This law firm is a debt

14 collector and we are attempting to collect a debt

15 owed to our client.  Any information obtained

16 from you will be used for the purpose of

17 collecting the debt."

18   Q   Now, they've identified themselves as a

19 debt collector attempting to collect a debt.

20 What does that make -- What does "debt" mean to

21 you?

22   **A   That means that you owe money.**

23   Q   Okay.  Do you think that the fact that it

24 says that followed, taken into conjunction with

SHANE W. WORTMAN
November 22, 2019

Page 52

1    the rest of the letter, is confusing when read
2    with the last disclaimer, the third disclaimer,
3    regarding the bankruptcy?
4        A    I think it's the direct source of the
5    confusion itself.  I think the letter, the way
6    it's stated in the body of the letter, there's a
7    certain level of aggression towards collecting
8    the actual debt and the process that they'll
9    follow to collect the money, and then at the very
10   end of the letter they almost try to shrug off
11   all the people that they think it may not be
12   necessarily intended for; and I think anyone in
13   our situation that would receive such a letter
14   would have the same response.
15       Q    Thank you.
16            The last question I have is you
17   indicated that this really had an effect on your
18   marriage earlier.  Can you further expound on
19   that?
20       A    Well, I think it's difficult for anyone
21   in a married household with kids, with
22   responsibilities, to face bankruptcy and
23   potential losing their home; and then, to feel
24   like you've been successful in that task and that

Page 53

1   you're finally moving towards the rest of your

2   life in recovery, to have something like this

3   show up and kind of tear down all the progress

4   that you think you've made emotionally it was

5   very distressing on our marriage initially when

6   we received the letter because we thought it

7   didn't work, we thought the bankruptcy did not

8   work, even after our conversations and

9   discussions with the lawyer and your office my

10  wife was still afraid that we were going to be

11  pursued with legal action because of how

12  aggressive the letter was stated initially --

13  many nights crying, arguments, the kids hearing

14  us arguing about it.  And, of course, they're

15  teenagers, so they're aware of what's going on,

16  so there was stress throughout the household for

17  quite a period of time.

18          It's come up again now that I'm back

19  here doing the deposition, it's kind of rekindled

20  the source of the conversation and source of the

21  heartache.

22  Q   My last question:  You indicated that you

23  had some emotional distress during the

24  bankruptcy.  The bankruptcy discharge was

**SHANE W. WORTMAN**
**November 22, 2019**

Page 54

1   September 11th, 2017.  You didn't receive this

2   letter until June of 2018.  Is it safe to say

3   that a lot of that emotional distress over the

4   bankruptcy had kind of subsided, and it wasn't

5   until you received this letter that it --

6       MR. HANEY:  Object to the form of the

7   question, but you can answer.

8       THE WITNESS:  A  Receiving the letter kind

9   of took the air out of our sails, took our breath

10  away.  We were under the impression that we had

11  separated from the bankruptcy, we paid our debt

12  as agreed, we had used the process as intended;

13  and I could tell you when we actually knew we

14  were going to pay everything off and be able to

15  have it discharged it was almost like a

16  celebration -- we actually went out to dinner

17  together.  We were happy to be away from it.

18  It's just a moment in your life where, okay,

19  we're finally past this; and, yes, we thought it

20  was over until we received the letter.

21      MR. DAVIDSON:  Okay, no further questions.

22      MR. HANEY:  Just a couple quick ones.

23

24

SHANE W. WORTMAN
November 22, 2019

Page 55

1            FURTHER EXAMINATION

2              by Mr. Haney:

3    Q   Mr. Wortman, you told me that bankruptcy,

4  particularly the bankruptcy that you went through

5  in this case, was a distressing event, correct?

6    **A   Correct.**

7    Q   So, regardless of whether or not you ever

8  received the letter, you would have had the

9  stress related to the bankruptcy proceeding,

10  correct?

11    **A   I think at the point we received the**

12  **letter we felt like we actually had been**

13  **successful in the process of the bankruptcy; and**

14  **receiving the letter removed that feeling of**

15  **success, it removed the thought that we had**

16  **separated ourselves.  We, literally, were under**

17  **the impression that now, even though we did the**

18  **bankruptcy, we were now still going to be**

19  **responsible to pay the debt back to the bank.**

20    Q   I understand that.  But whether or not

21  you ever got this letter you still would have had

22  the stress related to the bankruptcy, fair?

23    **A   Fair, yes.**

24    Q   I don't have anything else.  Thank you

SHANE W. WORTMAN
November 22, 2019

Page 56

1    for your time.  Appreciate it.

2        **A    Thank you.**

3        Q    We're done.

**SHANE W. WORTMAN**
**November 22, 2019**

Page 57

1    STATE OF ILLINOIS )
                      ) ss:
2      COUNTY OF COOK )

3            The within and foregoing deposition of

4    the aforementioned witness was taken before

5    NANCY K. SPEARE, C.S.R. and Notary Public, at the

6    place, date, and time aforementioned.

7            There were present during the taking

8    of the deposition the previously named counsel.

9            The said witness was first duly sworn

10   and was then examined upon oral interrogatories;

11   the questions and answers were taken down in

12   shorthand by the undersigned, acting as

13   stenographer and Notary Public; and the within

14   and foregoing is a true, accurate and complete

15   record of all of the questions asked of and

16   answers made by the aforementioned witness, at

17   the time and place hereinabove referred to.

18           The signature of the witness was not

19   waived, and the deposition was submitted,

20   pursuant to Rules 30(e) and 32(d) of the Rules of

21   Civil Procedure for the United States District

22   Courts, to the deponent per copy of the attached

23   letter.

24           The undersigned is not interested in

**SHANE W. WORTMAN**
**November 22, 2019**

Page 58

1   the within case, nor of kind or counsel to any of

2   the parties.

3           Witness my official signature and seal

4   as Notary Public in and for Cook County, Illinois

5   on this 21st day of September, A.D., 2020.

6

7            _____

             NANCY K. SPEARE, C.S.R.

8            Notary Public

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

SHANE W. WORTMAN
November 22, 2019

Page 59

1              TOOMEY REPORTING
          205 West Randolph Street
2                Suite 2201
          Chicago, Illinois 60606
3

4              WITNESS CERTIFICATION

5

6       I hereby certify that I have read the

7    foregoing transcript of my deposition consisting

8    of pages 1 through 59 inclusive.  Subject to the

9    changes set forth on the preceding pages, the

10   foregoing is a true and correct transcript of my

11   deposition taken on 11-22-19.

12

13

14

15

16              signed: _____

17                      SHANE W. WORTMAN

18

19   SUBSCRIBED AND SWORN TO
     before me this _____ day of
20   _____, A.D. 2020.

21

22

23

24

SHANE W. WORTMAN
November 22, 2019

Page 1

| A | | | | | |
|---|---|---|---|---|---|
| **A.D** 1:16 | **aggressive** 53:12 | 20:11 47:9 | 39:8,11,18 | 32:3,23 | 47:2 |
| 58:5 59:20 | **ago** 5:12 6:5 | **applicable** 4:12 25:19 | 40:3,5,13 | 34:21,23 | **break** 6:19,21 |
| **a.m** 1:16 | 6:15 17:1 | **applied** 36:6 | 43:20 | 35:1,6,12 | **breath** 54:9 |
| **abbreviated** 18:24 | **agree** 20:1,9 20:10 | **Appreciate** 56:1 | **attorneys** 8:14 27:12 | 35:16,19,21 36:5,19 | **briefly** 6:16 **brighter** 36:2 |
| **ability** 37:2 | **agreed** 54:12 | **approxima...** 32:5 | 46:23 | 37:19,23,23 | **brought** 13:6 |
| **able** 25:23 | **agreement** | **arguing** 53:14 | **attorneys'** 15:4,11 | 40:4 41:22 | 13:12,13 |
| 31:7 32:4 54:14 | 4:9 12:21 44:13 | **arguments** 53:13 | **attribute** 33:7 | 44:3 47:14 47:18 50:1 | **build** 10:9,11 **bulk** 23:22 |
| **absolutely** 7:23 23:24 | **ahead** 24:18 **air** 54:9 | **arose** 44:4 | **auction** 27:4 27:18 | 50:10 52:3 52:22 53:7 | **business** 10:8 11:2 |
| **absorb** 23:20 | **allegation** 48:16 | **aside** 17:23 **asked** 42:19 | **August** 5:13 29:2 | 53:24,24 54:4,11 | **buy** 38:1 |
| **accident** 6:7 **accommod...** | **allegations** 29:18 38:20 | 57:15 **asking** 4:17 | **Aurora** 9:24 10:21 | 55:3,4,9,13 55:18,22 | C |
| 6:20 12:23 | 39:12 | 7:2 26:8 | **auto** 6:7 | **based** 22:4 | **C.S.R** 1:11 |
| **accurate** 29:10 57:14 | **alleged** 15:24 46:1 49:12 | **asks** 14:2,15 43:7 48:2 | **Avenue** 2:2 10:2,3 | 38:3 42:16 42:20 | 57:5 58:7 **call** 4:22 23:5 |
| **acquired** 19:13 | **alleviated** 31:10 | 50:1 **associated** | **average** 42:7 **aware** 31:4 | **bases** 10:16 **basically** | 25:3 39:15 40:1,5 46:7 |
| **Act** 18:22 | **America** 28:5 | 30:1,22 | 31:17 32:2 | 19:11 | **called** 4:2 |
| 19:4,14 | **amount** 21:11 | 32:19 35:22 | 37:17 48:22 | **Bates** 46:23 | 23:8 39:18 |
| **acting** 57:12 | **anniversary** | **Association** 21:10 | 49:4,5 53:15 | **behalf** 1:4 2:5 2:10 41:15 | 46:23 **calls** 14:20 |
| **action** 1:4 18:6 40:8 | 9:12 **annual** 16:22 | **assumed** 24:10 | B | **believe** 22:6,7 22:15 26:4 | 40:7 **case** 6:6,10 |
| 53:11 | **answer** 7:3 | **Atlas** 2:1 | **back** 23:14 | 27:4,15 | 26:20 27:23 |
| **actual** 8:6 | 29:23 30:3 | 27:9 28:2 | 23:21 26:7 | 41:8 42:5 | 40:4 47:9 |
| 15:3 20:15 | 42:14 48:9 | **attached** | 46:17 47:22 | 42:12 44:14 | 55:5 58:1 |
| 29:17,19 52:8 | 49:17,19 54:7 | 20:15 57:22 | 51:5 53:18 55:19 | 45:18 **believing** | **cause** 32:11 **caused** 33:10 |
| **Adams** 2:7 | **answered** 23:15 | **attempt** 25:20 26:16 | **Badwan** 8:17 **bank** 17:7 | 42:1 **Berwyn** 11:8 | 34:24 **causing** 34:5 |
| **address** 5:16 10:1 17:2 | **answering** 6:22 | 37:13 41:14 **attempting** | 21:9,10,10 24:16 28:5 | **bills** 15:11 **birth** 5:19 | **celebration** 54:16 |
| 22:10 39:5 | **answers** 7:5 | 51:14,19 | 55:19 | **bit** 24:18 | **cents** 21:12 |
| **adversely** 36:9,11 | 8:8 29:10 57:11,16 | **attention** 19:17 30:17 | **bankruptcy** 17:8,11,21 | 40:17 **blood** 33:14 | **certain** 52:7 **CERTIFIC...** |
| **advice** 42:20 44:23 | **apologize** 21:11 | 30:18 47:22 **attorney** 7:13 | 21:9 23:12 24:7,14 | **Bob** 4:15 **body** 21:18 | 59:4 **certified** |
| **afford** 35:7 | **apparently** 36:23 | 13:16,19 26:10 27:11 | 25:17,19 30:2,23 | 23:19 24:10 41:13 52:6 | 22:14 **certify** 59:6 |
| **aforementi...** 57:4,6,16 | **appears** | 27:23 28:6 | 31:3,19,20 | **border** 10:16 **bottom** 46:22 | **chance** 29:6 33:1 |
| **afraid** 53:10 **aggression** 52:7 | | | | | **changes** 59:9 |

SHANE W. WORTMAN
November 22, 2019

| | | | | | |
|---|---|---|---|---|---|
| check 21:20 | come 5:13 | 32:7 | 26:9 31:10 | costs 15:5 | 15:21 16:5 |
| checkups | 12:24 53:18 | confused | 31:18 53:20 | counsel 1:19 | 29:17,20 |
| 16:22 | Comforts | 32:11,21 | conversatio... | 11:22,23 | 30:8 43:8 |
| Chicago 2:8 | 9:21 | 39:22 | 14:16 53:8 | 44:22,23 | 43:12,15 |
| 59:2 | communic... | confusing | convicted | 57:8 58:1 | 49:10,20 |
| citizens 19:8 | 38:20 | 24:3 52:1 | 50:19,21 | County 57:2 | date 4:9 5:19 |
| Civil 1:4,12 | communic... | confusion | Cook 57:2 | 58:4 | 12:18,20 |
| 4:12 57:21 | 14:3 46:6 | 29:24 30:5 | 58:4 | couple 5:13 | 17:18 20:4 |
| claim 15:3,17 | commute | 30:9,21 | copies 17:7,8 | 18:17 22:5 | 20:5,9 57:6 |
| 33:19 49:11 | 10:1 | 31:11 32:12 | 50:1 | 34:1 50:15 | dated 4:20 |
| claimed | compensated | 32:18 33:2 | copy 13:13 | 54:22 | 20:6 21:24 |
| 15:23 | 44:10 | 33:5 52:5 | 44:12 57:22 | course 6:24 | 22:4 |
| claiming | compensat... | Congratula... | core 30:18 | 23:5,20,21 | daughter |
| 29:17 33:13 | 43:7,11,14 | 9:13 | correct 12:7 | 24:2,17 | 5:18 |
| 33:17 | complaint | conjunction | 12:13,14,19 | 39:2 40:8 | Davidson 2:1 |
| claims 15:1 | 7:15,24 8:6 | 51:24 | 14:5,6,22 | 40:12 42:9 | 3:7 8:15 |
| 29:23 | 8:8 13:13 | considered | 14:23 17:12 | 42:10 46:9 | 23:10,11 |
| Class 18:6 | 18:6,18,21 | 32:15 | 18:12,15,16 | 53:14 | 25:4,24 |
| clean 7:3 | 19:15,18 | consisting | 18:22,23 | courses 11:15 | 26:3,9 |
| Cleaning | 20:16 29:19 | 59:7 | 20:7,16,22 | court 1:1 | 27:10,13 |
| 10:19,23 | 38:21 39:12 | consult 31:7 | 21:1,2 22:1 | 4:19 7:3 | 31:8,18 |
| clear 25:16 | 40:20 48:6 | consulting | 22:2,10 | 10:11 24:4 | 32:5 44:21 |
| clearly 26:18 | 51:5 | 31:6 | 23:17 25:21 | 44:22 | 44:23 51:1 |
| client 51:15 | complaints | consumer 2:1 | 32:6,8,9 | Courts 1:13 | 51:3,10 |
| collect 21:17 | 44:4 | 27:9 28:2 | 38:24 39:1 | 57:22 | 54:21 |
| 24:12 25:20 | complete | 42:11 | 39:4,7,9,10 | cover 6:16 | Davidson's |
| 26:16 41:14 | 43:19 57:14 | contact 40:9 | 39:20,21 | 8:10 | 43:23 |
| 42:3,6 | completed | 40:13 | 41:1,2 | covered 6:18 | day 25:11,12 |
| 51:14,19 | 27:2,14,15 | contained | 42:17,18,21 | credit 36:7,9 | 25:24 58:5 |
| 52:9 | completely | 22:24 29:18 | 42:24 45:2 | 36:12,13,14 | 59:19 |
| collecting | 7:2 49:3 | continue | 46:3,8,11 | 36:22 37:20 | days 22:5 |
| 51:17 52:7 | comprise | 32:18 41:18 | 47:3,4,13 | crying 53:13 | 33:22 34:1 |
| collection | 47:1 | continued | 47:15,16 | currently | death 34:10 |
| 18:22 19:4 | concerns | 4:9 12:20 | 48:8,10,11 | 24:2,4,7 | debt 18:22 |
| 19:14 24:17 | 17:7 | 23:23 | 48:14 49:17 | 25:17 33:22 | 19:3,9,14 |
| 41:19 | concerts | Continues | 49:18,22 | 37:7 | 21:17,18,22 |
| collections | 10:15 | 35:13 | 50:3,4,5,10 | custom 10:9 | 25:18,21 |
| 19:9 | condition | continuing | 50:11 55:5 | 10:12,13 | 26:16 40:6 |
| collector | 15:22 16:5 | 21:16 | 55:6,10 | customer | 41:15,16,18 |
| 41:15 51:14 | 16:11 49:10 | contract | 59:10 | 41:24 | 42:3,4,6 |
| 51:19 | 49:21 | 43:22 | correctly | | 46:1 51:13 |
| collectors | conduct | contradicto... | 15:6 16:2 | **D** | 51:14,17,19 |
| 40:6 | 15:24 49:13 | 24:9 | 29:21 30:3 | damages 15:3 | 51:19,20 |
| college 11:15 | confirmed | conversation | 40:22 | 15:4,5,18 | 52:8 54:11 |

SHANE W. WORTMAN
November 22, 2019

55:19
decontami...
  10:10
defendant
  1:8 2:10
  14:4 19:22
  21:1 46:1
defendant's
  15:24 49:12
definite 30:18
definitely
  48:21
deponent
  57:22
deposition
  1:10,19 3:1
  4:8,11,21
  5:24 6:14
  6:17 7:11
  8:12 9:2,4
  12:3,7,11
  12:15 18:5
  18:12 28:15
  29:7 45:6
  50:18 53:19
  57:3,8,19
  59:7,11
depositions
  1:14
deposits
  21:19
describing
  32:14
descriptive
  21:21 41:14
  41:16
despite 26:18
  43:1
details 27:22
determinat...
  31:5
devastating
  23:3
different

27:19
difficult
  37:24 52:20
difficulty
  36:4
digits 5:21
dinner 54:16
direct 19:17
  24:9 31:4
  31:20,23
  47:21 52:4
director 10:5
disarm 41:24
discharge
  17:16,18,20
  21:8 24:9
  24:14 25:18
  31:19,21
  32:1,3
  53:24
discharged
  21:23 32:23
  54:15
disclaimer
  23:22 24:1
  25:7,14,16
  26:14 33:1
  41:21 51:11
  52:2,2
disconnecti...
  24:16
discuss 8:12
discussions
  37:16 53:9
dishonesty
  50:22
disputed
  45:24
distress 15:22
  16:8,11
  29:24 30:6
  30:7,12,12
  30:22 31:11
  32:12,19

33:5 34:6
34:17,20,24
35:11 49:11
49:21 53:23
54:3
distressed
  35:19
distressing
  35:3,21
  53:5 55:5
District 1:1,1
  1:13 4:14
  4:19 57:21
DIVISION
  1:2
divorced
  34:13
doctor 16:10
  33:5
doctor's
  30:17
document
  11:23 12:1
  12:4,6 18:3
  28:13,16
  45:4,7
  46:13
documentary
  48:23
documents
  7:10,16,19
  9:3 13:6,6
  13:16,18,22
  14:3,12
  15:1,2,8
  18:10 29:5
  45:14,23
  46:10 47:1
  47:6,8,10
  47:17,18
  48:16
doing 8:21
  53:19
dollars 21:11

downtown
  12:24
Dr 16:17
due 35:8
  41:16
duly 4:3 57:9
dunning
  19:22 20:2
DuPage
  16:17
duplication
  38:23

—————
E
—————
E 2:6
earlier 18:9
  20:14,23
  21:23 52:18
early 23:13
East 11:8
EASTERN
  1:2
economic
  15:17
education
  11:5,12
effect 30:2,24
  31:2,4,19
  31:20,23
  32:3 52:17
Eighteen
  17:7
electronic
  28:21,24
emotional
  15:22 16:8
  16:11 29:24
  30:6,7,11
  30:22 31:11
  32:12,19
  33:5 34:6
  34:17,20,24
  35:11 49:11
  49:21 53:23

54:3
emotionally
  53:4
employed
  9:18
engagement
  43:19
entire 20:20
  22:17,22
  23:17 38:18
entirety 25:9
  27:21 32:16
entitled 12:6
  28:16 45:7
  45:11
equipment
  10:19,23
  11:3,4
event 10:14
  55:5
events 10:14
everybody
  50:17
everyone's
  12:20
evidence
  40:18,21
  43:3 48:3
  48:20,23
  49:4
evidencing
  45:24
exactly 13:12
  31:9 42:7
EXAMINA...
  3:5 4:5 51:2
  55:1
examined 4:3
  57:10
excuse 4:14
  17:8
executed 8:3
exhibit 3:11
  3:12,13,14

3:15 12:3
18:5,14,15
20:15,20
28:15,21
40:20 45:6
46:17,21
47:2,6,10
47:22 48:6
48:13,18
51:5,5
EXHIBITS
  3:10
expenses 15:4
  15:15
experience
  38:3
explain 24:21
  29:19 40:2
  41:11
explained
  42:15
expound
  52:18
ext 2:3

—————
F
—————
F-D-C-P-A
  18:24
face 52:22
fact 32:24
  45:24 51:23
Factory
  10:19,22
fair 14:19
  18:22 19:3
  19:14 31:12
  43:4,5
  55:22,23
familiar 19:3
familiarized
  18:11
family 16:18
  30:14 34:10
far 7:8 27:21

**SHANE W. WORTMAN**
**November 22, 2019**

Page 4

36:24
**father** 5:18
**fault** 21:3,5
  21:13
**February**
  27:15
**federal** 1:12
  4:12,19
**feel** 31:15
  52:23
**feeling** 55:14
**fees** 15:4,12
**felony** 50:19
**felt** 31:23
  37:10 40:12
  55:12
**file** 7:17
  17:11 35:1
  35:6,21
**filed** 17:8
  35:15 47:10
**filing** 17:14
  47:19
**finally** 53:1
  54:19
**financial**
  35:14
**financially**
  36:23
**find** 21:3,5
  21:13
**fine** 23:21
  41:21 51:10
  51:12
**finish** 6:23
  7:1
**finished**
  50:13
**firm** 27:11,13
  43:23 47:7
  51:13
**first** 4:2 25:2
  25:6 26:2
  28:18 33:21

40:8 41:13
42:8 45:13
45:20 46:16
51:11 57:9
**five** 12:9
  29:13
**flip** 23:20
  51:10
**floored** 23:4
**follow** 52:9
**followed**
  51:24
**following**
  1:19 26:4
**follows** 4:4
**foreclosure**
  26:22 27:1
  27:8,14,20
  27:20 34:18
  40:4 44:3
**foregoing**
  57:3,14
  59:7,10
**form** 15:14
  54:6
**forth** 59:9
**forwarded**
  7:17
**four** 5:21
  14:14
**fraction**
  40:19 48:5
**front** 12:4
  13:8
**full** 5:6
**further** 17:21
  23:23 24:1
  52:18 54:21
  55:1

**G**

**general** 19:12
  35:23
**generally**

34:8,9
**getting** 15:11
  24:18 33:15
  33:18
**give** 13:16,18
  13:24 24:21
  41:16
**given** 5:24
  6:14
**glance** 42:8
**go** 13:4
**goes** 21:16
  41:16 42:4
**going** 4:17,22
  9:5 22:5
  38:18 42:6
  46:14,16
  51:5 53:10
  53:15 54:14
  55:18
**good** 34:8
**government**
  10:15
**grad** 11:6
**graduate**
  11:7,10
**ground** 6:17
**group** 16:17
  30:18 36:1
**guess** 13:8
  33:9

**H**

**half** 5:12
**handed** 11:22
**handling**
  40:3
**Haney** 2:6
  3:6 4:6,15
  10:17 11:21
  11:24 12:2
  18:4 28:11
  28:14 45:1
  45:5 46:14

50:24 51:8
54:6,22
55:2
**happening**
  34:5
**happy** 6:19
  54:17
**health** 34:8
**healthy** 34:15
  34:15
**hear** 4:24
**hearing**
  53:13
**heartache**
  53:21
**hereinabove**
  57:17
**high** 11:6,7,8
  11:12 33:14
**highest** 11:5
**Highland**
  1:15 2:1
**hold** 25:3,23
**home** 9:21
  30:19 35:2
  37:3,6
  38:11 52:23
**homes** 37:18
  38:4,6,11
**honest** 23:2
**house** 27:4,5
  27:17 38:1
**household**
  30:12,16
  52:21 53:16

**I**

**identified**
  51:18
**identify**
  40:21 43:7
**ill-effects**
  35:15
**Illinois** 1:1,15

2:3,8 4:14
4:20 5:10
9:24 10:21
11:9 57:1
58:4 59:2
**immediately**
  23:5,18
**impression**
  54:10 55:17
**inaudible**
  24:3 44:21
**include** 44:7
  47:11
**included**
  27:13 35:24
**includes**
  12:12
**including**
  15:22 40:7
  49:11,21
**inclusive** 59:8
**Incorporated**
  9:22
**incorrect**
  20:8
**incurred**
  29:17
**indicated**
  18:9 52:17
  53:22
**INDIVIDU...**
  1:3
**industrial**
  10:15 11:3
**information**
  25:20 26:11
  29:9 41:17
  51:15
**initial** 23:1
**initially** 25:2
  25:9 42:9
  53:5,12
**injury** 6:10
**inspection**

42:10
**instructed**
  40:5,9
**intended**
  42:2 52:12
  54:12
**intending**
  24:12
**intent** 19:9
  21:21
**interest** 17:7
**interested**
  57:24
**internal** 33:9
  33:10
**interrogato...**
  4:4 8:1,2
  28:18 57:10
**interrogato...**
  8:7 29:10
  29:13 38:15
  43:18
**introduced**
  4:16
**involving**
  4:20 50:22
**Ira** 1:7 14:5
  28:17 39:15
  39:19 45:8
  45:12 46:7
**item** 14:2
**items** 13:5

**J**

**Jade** 5:18
**January** 16:1
  49:14
**jdavidson...**
  2:4
**JOSEPH** 2:1
**June** 4:20
  19:21 20:5
  20:6,7 22:1
  22:6,17

SHANE W. WORTMAN
November 22, 2019

25:1 32:6
34:4 39:15
54:2
**jurisdictio...**
7:16,18

**K**

**K** 1:11 57:5
58:7
**keep** 26:8
**kids** 30:14
34:15 52:21
53:13
**kind** 11:16,19
33:7 46:5
53:3,19
54:4,8 58:1
**knew** 54:13
**know** 5:2
17:18 22:14
23:11,16
24:24 27:21
28:6,9,10
32:11 33:4
36:2,14,20
37:18 38:16
41:3,22
43:11 48:12
50:6
**knowing** 9:5
**knowledge**
19:13 24:14

**L**

**Lane** 5:10
39:5
**language**
22:23 24:6
24:9 26:14
26:18
**law** 1:7 2:1
14:4,17
25:19 28:17
45:8,12

47:7 51:13
**lawsuit** 4:18
13:20 15:15
15:18 16:12
**lawyer** 31:6,8
53:9
**lawyers** 23:6
23:7
**led** 42:12
**Left** 23:9
**legal** 53:11
**lender** 24:13
**let's** 20:18
**letter** 4:20,22
7:15 8:7
13:14,23
14:7 18:15
19:22 20:2
20:12,15,17
20:20,21,24
20:24 21:3
21:6,7,18
21:24 22:3
22:7,13,17
22:18,23
23:2,3,16
23:17,19
24:10,11
25:1,7
26:16 31:2
31:16,18
32:3,20,22
33:7,15,19
33:24 34:4
39:14,19,23
40:10 41:4
41:9,12,13
41:23 42:5
42:12,16
43:2,3 46:6
46:7 47:11
48:13,18,19
48:20,23
49:1 50:7,8

51:6 52:1,5
52:6,10,13
53:6,12
54:2,5,8,20
55:8,12,14
55:21 57:23
**letter's** 20:5
**letters** 1:9
19:10 40:6
**level** 11:5
52:7
**licenses** 11:18
**LIEBERM...**
2:6
**life** 34:5 36:1
53:2 54:18
**Lincolnway**
27:6
**line** 14:14
23:24
**lines** 23:23,23
**literally**
20:19 55:16
**litigation**
15:4,15
44:7
**little** 24:18
40:16
**live** 5:9 37:3
37:6
**lived** 5:11
**living** 38:9
**LLC** 1:7
**LLC's** 28:18
45:13
**loan** 36:4
37:11,13,24
**local** 4:13
**located** 9:23
10:20
**location** 39:5
**Lombard**
1:15 2:3
**long** 5:11

9:11 10:6
10:22 16:20
32:18 35:11
**look** 7:14,20
13:1 29:6
46:14,21
51:4
**looked** 13:7
**looking** 40:17
46:16 50:13
**looks** 35:24
**losing** 35:1
52:23
**lost** 33:21
**lot** 54:3

**M**

**mail** 14:12
22:14,14,15
**making** 15:17
16:4 21:19
33:19
**malicious**
19:9
**mark** 11:24
18:1 28:11
**marked** 12:1
12:3 18:3,5
28:13,15
45:4,6
46:13
**market** 35:8
**marketing**
10:5
**marriage**
30:13 52:18
53:5
**married** 9:7
9:11 52:21
**mean** 19:7
49:19 51:20
**means** 19:5
51:22
**medical**

15:21 16:1
16:5,11,17
49:10,13,20
**meeting** 9:6
**mentioned**
14:7 20:14
**mentions**
21:17
**message** 23:9
**met** 23:13
**middle** 6:22
**military**
10:16
**mind** 26:8
**mine** 42:18
**minutes** 8:23
18:17
**misdemean...**
50:22
**mislead** 41:4
**misleading**
43:4
**misled** 40:20
41:1,9 48:6
48:18
**missing** 48:2
**misunderst...**
24:15
**Mohammad**
27:13
**moment**
17:24 54:18
**Monday** 22:6
26:4
**money** 15:14
21:9,16
42:13 51:22
52:9
**months** 5:13
10:7 21:8
21:23 32:22
**morning** 8:20
**mortgage**
35:7

**Morton** 11:8
**move** 40:16
**moving** 14:14
14:24 53:1

**N**

**name** 4:15
5:6
**named** 57:8
**NANCY** 1:11
57:5 58:7
**National**
21:10,10
**nature** 6:6
10:8 11:2
**necessarily**
52:12
**necessary** 5:3
**need** 6:18 7:1
**needed** 35:5
**Nevel** 1:7
14:5,12,17
28:9,17
39:15,19
40:1,14
45:12 46:7
**Nevel's** 14:10
45:9
**never** 46:5
**Nicole** 5:17
9:9 38:23
39:2
**night** 33:18
**nights** 53:13
**nine** 21:8,23
32:22
**NOONAN**
2:6
**Northern** 1:1
4:13,19
**Notary** 1:11
57:5,13
58:4,8
**notes** 50:13

SHANE W. WORTMAN
November 22, 2019

Page 6

notice 4:9
12:6,11,15
25:19
November
1:16 3:3
number
11:24 12:3
14:2,14
15:20 17:5
18:1,6,14
28:11,15
29:13 38:15
40:17 43:7
43:18 45:7
45:21 46:12
46:17,18,21
47:2,11,22
47:23 48:2
49:6,23
numbered
13:5 47:2
numbers
46:22,23

O

Object 54:6
Objections
28:17 45:8
45:12
obtained
24:8 25:18
51:15
obtaining
36:4
obviously
12:19 17:6
36:3
occur 25:11
October
12:18
offended
50:16
office 14:10
14:17 23:9

26:3 53:9
Offices 1:7
14:5 28:17
45:8,12
official 58:3
Oh 25:12
okay 4:7,22
4:23 6:14
7:5,10,20
8:5,7 12:18
13:4,15,18
14:2,14,24
15:20 17:5
17:20,23
18:17,20
19:17,21
20:11,23
23:14 24:23
25:6,10,23
26:5,11
29:12,16
30:15 31:7
31:14,22,24
32:10,17
33:10,13,23
34:3 37:22
38:3 39:8
39:11,14
41:11 42:14
43:6,11,14
45:17,23
46:4,9,15
46:21 47:10
47:21 49:2
49:6,23
50:1,24
51:23 54:18
54:21
once 6:15
21:20
ones 13:7,8
13:11 54:22
opinion 41:7
42:20 43:2

opportunity
13:1 24:21
opposing
11:22
oral 4:3 57:10
order 41:24
original
13:14
outside 30:16
overall 33:8
33:10
overseas
10:16
overzealous
19:10
owe 21:15,17
51:22
owed 21:9
42:3,13
51:15

P

page 3:5,10
12:12 14:24
19:18 20:19
22:24 23:21
25:8 26:14
28:20 29:13
38:16 40:17
41:13,20
42:8,9 43:6
43:18 45:21
49:6,23
51:10
pages 12:9
47:11 59:8
59:9
paid 15:14
41:17 54:11
paragraph
19:21 20:8
20:11,19
43:17
part 12:11

25:2 27:18
42:12
particularly
55:4
parties 4:10
58:2
party 26:22
pay 54:14
55:19
payment
35:10
pending 4:18
people 52:11
period 53:17
person 42:7
personal
30:18 41:7
42:16 43:1
pertaining
1:14
petition
47:15 50:10
petitions 17:8
50:2,10
phone 7:20
13:8 14:16
14:20 32:4
40:7 46:6
physical 33:6
33:11
physician
16:14,16,18
place 19:11
57:6,17
Plainfield
5:10 17:4
plaintiff 1:5
2:5 6:8 15:5
15:20 19:22
28:4,7
29:16,23
38:19 40:18
40:24 45:24
49:9

plaintiff's
15:3 28:16
45:7,11
please 15:24
49:13
point 13:15
55:11
population
40:19 48:5
48:17
portion 20:17
20:19 48:17
possession
48:3
possibly 22:8
post 11:12
potential
52:23
practice
19:11
Practices
18:22 19:4
19:14
preceding
59:9
preparation
9:4
prepare 9:1
present 1:18
16:2 49:14
57:7
presently
37:3 39:6
pressure
33:14
presume 20:1
30:8
pretty 6:17
21:20
previous
24:13
previously
13:3 24:8
25:18 57:8

print 23:21
41:21 51:11
51:12
prior 18:11
37:22 38:11
privileged
26:10
problem
24:20
Procedure
1:13 4:13
57:21
proceeding
24:8 25:17
55:9
proceedings
7:8 17:21
23:12 34:18
34:21,24
process 23:13
25:1 41:21
44:3,5 52:8
54:12 55:13
processes
44:4
produce
15:24 49:13
produced
47:7
production
45:13 47:8
professional
11:18
progress 53:3
proper 40:12
proposition
48:4
protect 19:11
protection
19:8
provided
44:19,24
providing
19:23

**SHANE W. WORTMAN**
**November 22, 2019**

Page 7

| | | | | | |
|---|---|---|---|---|---|
| **public** 1:12 19:12 57:5 57:13 58:4 58:8 | **Rathbone** 10:2 **reach** 23:10 **read** 15:6 | **recognize** 47:17 **recollection** 22:5 **record** 4:7,10 | 47:18 55:9 55:22 **relating** 14:3 15:1,18 16:12 | 22:11 **resolved** 33:2 33:24 **response** 30:6 | 30:20,24 31:17 32:2 32:10,17,24 33:4 35:3 |

**public** 1:12
19:12 57:5
57:13 58:4
58:8
**pulled** 7:22
**purchased**
37:18 38:4
38:6
**purpose**
51:16
**purposes**
4:21
**pursuant**
1:12 4:8
57:20
**pursue** 41:18
**pursued**
53:11
**put** 17:23
19:11 33:9

**Q**

**question** 5:3
6:22 23:15
29:12,16,20
30:1,23
38:14 40:17
45:20 50:16
50:18 52:16
53:22 54:7
**questions**
4:18 5:1,2
6:23 7:2,7
45:19 50:15
50:24 54:21
57:11,15
**quick** 54:22
**quite** 53:17

**R**

**R-A-T-H-...**
10:2
**Randolph**
59:1

**Rathbone**
10:2
**reach** 23:10
**read** 15:6
16:2 22:17
22:22,23
23:17,19
25:2,7,14
26:13,14
29:20 30:2
33:1 38:18
40:21 42:7
42:10 45:9
45:14 49:15
51:11 52:1
59:6
**reading** 17:5
19:15 42:11
42:16
**realize** 6:14
**really** 30:9
52:17
**reason** 6:19
35:5 41:8
44:15,18
**reasons** 40:7
**receive** 17:16
21:20 22:3
23:3 52:13
54:1
**received**
13:23 14:10
21:1,7 22:7
22:16 23:16
25:6 32:22
34:3 39:14
40:6 53:6
54:5,20
55:8,11
**receiving**
31:16 32:20
33:22,24
41:9 54:8
55:14

**recognize**
47:17
**recollection**
22:5
**record** 4:7,10
4:17 5:7 7:4
26:15 57:15
**recordings**
14:15,20
**records** 16:1
49:14
**recover** 21:21
**recovery**
15:21 16:5
16:7 49:10
49:20 53:2
**reduced**
36:22
**Reduction**
36:13
**reference**
18:21
**referenced**
50:4
**references**
46:18
**referred**
57:17
**referring**
20:4
**reflect** 4:7
**regarding**
38:20 52:3
**regardless**
55:7
**regular** 22:14
22:15
**rekindled**
53:19
**relate** 15:2
**related** 6:7
21:19 30:12
35:12 41:17
41:19,21

47:18 55:9
55:22
**relating** 14:3
15:1,18
16:12
**relevant**
13:19
**remaining**
50:9
**removed**
55:14,15
**rent** 37:8,9
**renting** 38:10
38:12
**repeat** 5:2
**rephrase** 5:3
**reporter** 7:3
10:11 24:4
44:22
**REPORTI...**
59:1
**represent**
44:2
**represented**
27:8 28:1,7
**representing**
43:20
**request** 6:21
15:9 45:20
46:18 47:8
47:22 48:2
48:7 49:9
**requested**
12:1 18:3
28:13 45:4
46:13
**Requests**
45:13
**require** 30:17
**research**
19:16
**reside** 5:15
39:6
**residing**

22:11
**resolved** 33:2
33:24
**response** 30:6
30:21 38:15
38:19 40:24
46:1,18
47:7 52:14
**Responses**
28:16 45:8
45:11
**responsibili...**
52:22
**responsible**
55:19
**responsive**
15:9
**rest** 52:1 53:1
**restroom**
10:9,13
**result** 15:23
27:3 29:18
33:14,18
34:18 35:15
37:23 49:12
**review** 7:10
**reviewed**
7:12,16 9:3
13:3
**rhaney@n...**
2:9
**Richard** 5:18
**rider** 12:12
13:2 14:2
**right** 4:24 5:6
12:22 13:9
14:7,20
15:8 19:1,2
20:21 22:13
22:16,22
23:14 24:24
25:4,8 26:7
28:3,20
29:9 30:5

30:20,24
31:17 32:2
32:10,17,24
33:4 35:3
36:24 37:3
37:21 38:12
39:23,24
40:24 41:3
42:23 43:1
43:4 45:1
45:14 46:2
46:7,10,22
47:2,5,12
48:13,15
49:15 50:2
50:12,14
**rights** 31:15
**ROBERT** 2:6
**Ross** 5:10
39:5
**Route** 17:3
**rules** 1:12
4:12,12,13
6:17 37:17
57:20,20

**S**

**S** 2:1
**safe** 54:2
**sails** 54:9
**sale** 27:18,20
**sales** 10:5
11:3,4
**saw** 16:24
24:2
**saying** 23:20
**says** 15:2
19:21 20:5
25:16,21,22
30:21,24
38:19 42:2
42:3,8
45:23 51:24
**school** 11:6,7

**SHANE W. WORTMAN**
**November 22, 2019**

Page 8

11:8,13
**score** 36:13
36:14,22
**seal** 58:3
**second** 12:12
25:8 30:20
35:7 41:20
42:9 45:14
**section** 20:12
**see** 13:5
16:22 17:3
17:9 18:7
19:23 43:8
43:20 45:22
46:19,24
47:1 48:9
**seeing** 16:20
**seeking** 15:21
16:4,7 43:8
43:14 49:9
49:20
**seeks** 15:5
**seen** 12:15
33:4 45:17
**send** 24:11
**sender** 40:10
**sent** 19:22
22:13 46:5
**separate**
32:13
**separated**
54:11 55:16
**September**
17:19 54:1
58:5
**Services** 9:21
**set** 23:2 28:18
41:12 45:13
59:9
**seven** 10:7
**Shane** 1:3,10
3:2 4:1,8
5:8,17 9:16
59:17

**shock** 23:2
**short** 27:18
**shorthand**
57:12
**show** 4:10
53:3
**shower** 10:9
10:13
**showing** 12:2
18:4 28:14
45:5
**shrug** 52:10
**side** 36:2
46:15,15
**sign** 36:1
**signature**
22:24 23:24
28:21,22,24
57:18 58:3
**signed** 29:2
59:16
**significant**
40:19 48:5
48:17
**SIMILAR...**
1:4
**sir** 42:22
**sits** 50:17
**SITUATED**
1:4
**situation**
52:13
**six** 10:24
38:15
**slash** 29:24
30:6,22
32:12,14,19
**sleep** 33:18
33:21
**sleeplessness**
33:23
**social** 5:22
35:22
**society** 35:23

**sold** 27:4,17
**solid** 37:19
**son** 5:17 9:15
34:15
**sorry** 5:14
10:11 44:17
44:22 45:9
**sort** 6:24
46:15
**sounds** 25:2
**source** 43:3
52:4 53:20
53:20
**South** 1:15
2:2
**speak** 30:17
39:8,11
**SPEARE**
1:11 57:5
58:7
**specifically**
28:8
**spend** 8:21
18:17
**spoke** 8:15
26:2
**spoken** 16:10
**ss** 57:1
**stamped**
46:23
**start** 7:2
45:10
**started** 8:13
29:6
**starting** 7:11
12:12 18:12
**STATE** 57:1
**stated** 21:24
26:19 52:6
53:12
**statement**
21:14
**statements**
21:19

**states** 1:1,13
15:20 38:19
57:21
**stating** 21:9
**status** 27:1
**statutory**
15:3
**stenographer**
57:13
**step** 7:4
**stigma** 35:22
**Street** 2:7
17:3 27:6
59:1
**stress** 30:13
53:16 55:9
55:22
**strife** 33:9,10
**Strike** 8:24
18:20 43:17
**Subject** 59:8
**submitted**
57:19
**SUBSCRI...**
59:19
**subsided** 54:4
**success** 55:15
**successful**
52:24 55:13
**suffer** 32:18
**suffered**
15:23 29:24
33:14 49:12
**suffering**
35:14
**Suite** 1:15 2:2
2:7 59:2
**support** 48:4
48:16
**supports** 48:4
**sure** 7:21
20:18 23:6
23:15 48:1
**sworn** 4:3

57:9 59:19
**symptoms**
33:6,11

————————

**T**

**T** 1:7 14:5
28:17 38:23
39:15,19
45:8,12
46:7
**table** 13:9,11
50:17
**take** 6:19,21
29:6 51:4
**taken** 1:10
3:3 4:8,11
11:15 51:24
57:4,11
59:11
**talking** 30:8
30:9 44:7
**talks** 14:24
**tape** 14:15
**task** 52:24
**team** 16:24
**tear** 53:3
**teenagers**
53:15
**telegraphed**
7:1
**tell** 5:6 11:1
19:18 29:14
54:13
**telling** 31:8
**ten** 17:9,12
42:4
**tends** 48:4
**terms** 20:9
43:19 44:1
**testified** 4:4
6:12
**testimony**
49:3
**Thank** 9:14

52:15 55:24
56:2
**thing** 6:20
32:13,16
38:18
**things** 14:15
19:10 32:13
34:5
**think** 9:15
11:1 13:19
18:9 20:23
24:18 32:5
32:15 35:20
35:21,23
38:22 42:6
46:4 49:3
50:12,14
51:23 52:4
52:5,11,12
52:20 53:4
55:11
**thinking**
24:12
**third** 38:8
52:2
**thorough**
42:10
**thought**
37:15,24
53:6,7
54:19 55:15
**three** 16:21
38:7,11
51:1
**Thursday**
22:8
**time** 4:24 6:3
8:21 13:15
22:11 26:2
34:3,11
45:15 53:17
56:1 57:6
57:17
**times** 6:2

**SHANE W. WORTMAN**
**November 22, 2019**

Page 9

42:5
title 11:1
today 4:17
  6:17 7:11
  8:13 9:6
  12:20 13:7
  13:9 18:12
  29:7 32:21
  35:13,15,18
  44:8
today's 4:9
told 9:15
  20:23 23:17
  28:3 30:7
  39:9 46:4
  55:3
TOOMEY
  59:1
top 41:23
trailers 10:10
  10:14
transcript
  59:7,10
treating
  16:14,16
trek 12:24
trial 6:12
tried 23:19
true 12:9
  20:12,13
  46:5 57:14
  59:10
truth 50:22
try 7:4 21:21
  25:3 37:20
  52:10
trying 23:10
turned 44:16
two 14:2
  23:23 32:12
  37:19,22
typo 20:1,7

___ U ___

ultimately
  23:18 26:13
unable 33:18
  35:9
undersigned
  57:12,24
understand
  5:1,4 7:6
  18:18 20:2
  26:15,19
  49:2,3
  55:20
understand...
  19:5 21:22
  44:6 47:5
Understood
  26:11,12
United 1:1,13
  57:21
unsure 44:11
use 10:14,15

___ V ___

violated
  31:16
vs- 1:6

___ W ___

W 1:3,10 3:2
  4:1 59:17
Wait 51:8
waived 57:19
want 6:16
  13:4 19:17
  24:24 32:10
  43:6 48:1
  50:15
wanted 23:16
wasn't 54:4
water 35:9
way 33:9
  36:11 41:12
  52:5
we'll 6:19

we're 20:18
  24:15 30:8
  30:9 32:21
  38:10 40:17
  44:7 54:19
  56:3
we've 37:16
  37:16,17
weakness
  36:1
wedding
  10:14
Wednesday
  22:8
week 9:5 22:8
  34:2
went 4:16
  54:16 55:4
weren't 24:12
West 2:7 59:1
wife 5:17 9:9
  22:20,21
  39:3 41:5
  53:10
wife's 42:18
William 5:8
Williams
  16:17
witness 4:2
  10:13,19
  12:5 18:8
  24:6 28:19
  45:2 51:13
  54:8 57:4,9
  57:16,18
  58:3 59:4
word 30:5
work 9:20,21
  10:17,22
  37:15 53:7
  53:8
worked 10:6
  27:12
Wortman 1:3

1:10 3:2 4:1
  4:8,15 5:8
  12:2 18:2,4
  28:12,14
  38:23 45:5
  46:16,19
  48:9,12
  55:3 59:17
wouldn't
  37:15
written 43:22
  44:12
wrong 31:14
  45:9

___ X ___

___ Y ___

Yeah 6:24
  34:2 37:6
year 5:12,12
  10:7 17:1
  27:16
years 6:5,15
  10:24 16:21
  17:9,12
  37:19,22

___ Z ___

___ 0 ___

___ 1 ___

1 3:11 11:24
  12:4 46:19
  47:3,11
  48:9,12
  50:4,6 59:8
1:18-cv-04...
  1:6
105 2:7
11 47:23 48:2
11-22-19
  59:11
116 2:3

11th 17:19
  54:1
12 3:11
13 15:20
  40:17 49:6
143rd 17:3
15th 19:21
  20:5
18 3:12 17:5
  43:7 49:23
1800 2:7
18th 4:20
  20:6,7 22:1
  22:6
19 27:16
  43:18
19-year 9:12
1993 11:11
1st 16:1
  49:14

___ 2 ___

2 3:12 18:1,6
  18:14 22:24
  26:14 29:13
  38:16 47:11
  48:9,12
  50:6 51:5
20 6:5,15
  8:23
200 1:15 2:2
2015 16:1
  49:14
2017 17:19
  54:1
2018 4:21
  19:22 22:1
  22:17 32:6
  34:4 39:15
  54:2
2019 1:17 3:3
  12:19 29:3
2020 58:5
  59:20

205 59:1
20th 22:9
21st 22:9
  58:5
22 3:3
2201 59:2
22nd 1:16
  29:2
24633 27:5
2500 1:14 2:2
25804 5:10
26th 26:6
  32:6
28 3:13

___ 3 ___

3 3:13 14:24
  28:11,15
  40:17 45:21
  47:17 50:9
30 8:23
30(e) 57:20
309,456
  21:11
30th 12:18
312 2:8
32(d) 57:20

___ 4 ___

4 3:6,14 43:7
  45:3,7
  46:15,17
  47:22 49:23
40 19:21 20:8
41 20:11,19
410 10:2
431-1455 2:8
45 3:14
46 3:15

___ 5 ___

5 3:15 43:18
  46:12,15,22
  47:2,6,11
  48:13

**SHANE W. WORTMAN**
**November 22, 2019**

**51** 3:7
**5233** 5:23
**55** 3:6
**575-8181** 2:3
**59** 17:3 46:19
   47:3,17
   50:4,9 59:8

───────────
**6**
**60148** 2:3
**60506** 10:3
**60603** 2:8
**60606** 59:2
**630** 2:3
**653** 36:21
**68** 21:12

───────────
**7**
**728** 36:18

───────────
**8**
**8** 19:18 45:21
**8-11-75** 5:20

───────────
**9**
**9:53** 1:16