IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANE W. WORTMAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAW OFFICES OF IRA T. NEVEL, LLC.,<br><br>Defendant. | Case No. 1:18-cv-04522<br><br>Hon. Charles R. Norgle |

## ORDER

The Court exercises its authority to dismiss this case without prejudge for lack of subject matter jurisdiction. Defendant Law Offices of Ira T. Nevel, LLC's motion for summary judgment [49] is denied as moot. The Clerk is ordered to close the case.

### Memorandum Opinion

This case is about whether a letter sent by a debt-collection law firm to a consumer about his mortgage ran afoul the Fair Debt Collection Practices Act ("FDCPA") because it allegedly contained false and misleading information about his mortgage, from which the consumer was personally discharged in bankruptcy. Because the Plaintiff has not demonstrated a cognizable injury, the Court must dismiss the case for lack of jurisdiction.

### I. BACKGROUND

Shane Wortman and his spouse, Nicole Wortman, executed a mortgage on their home in 2006 but defaulted on that loan in 2016. Def.'s SOF ¶¶1-2. In November 2016, they filed for bankruptcy. Dkt. 56 at 2. The Bankruptcy Court confirmed a Chapter 13 bankruptcy plan in 2017. In re Shane William Wortman and Nicole Teresa Wortman, No. 16-37931 at dkt. 20 (Bankr. N.D.

Ill. 2017). The bankruptcy plan permitted the foreclosure of the home to the lender for satisfaction of the debt but extinguished all personal liability against Shane and Nicole Wortman on the mortgage. Id. at dkt. 2. On September 11, 2017, the Bankruptcy Court issued a discharge order that stated:

> Creditors cannot collect discharged debts. This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. . . . However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien.

Id. at dkt. 32. In June 2018, the Law Offices of Ira T. Nevel, LLC ("Law Firm") was retained by the mortgage-holder to commence foreclosure proceedings. Def.'s SOF ¶¶1-2. On June 18, 2021, the Law Firm ordered a PACER search and discovered Wortman's bankruptcy discharge. Dkt. 51 at 9. On the same day, the Law Firm sent Wortman a letter concerning the debt. Despite the discharge of their personal debt on their home, Wortman received a letter from the Law Firm stating that "you owe [the mortgage lender] $309,456.68. Because of interest, and other charges that may vary from day to day, the amount due on the day you pay may be greater." Dkt 51. at 7. (emphasis added). The letter goes on to discuss payment collection procedures and describe a 30-day limit for Wortman challenge the validity of the debt. Then, the letter reads, "The law does not require this office to wait until the end of the thirty-day period before suing you to collect this debt," and then discusses summons proceedings in court. Id. (emphasis added). Below the signature line, the letter contains disclaimers. The first states:

> THIS LAW FIRM IS A DEBT COLLECTOR AND WE ARE ATTEMPTING TO COLLECT A DEBT OWED TO OUR CLIENT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THE PURPOSE OF COLLECTING THE DEBT.

2

The other disclaimer, at the very end of the letter and below the signature line, states:

> IF YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY OBTAINED A DISCHARGE OF THE DEBT UNDER APPLICABLE BANKRUPTCY LAW, THIS NOTICE IS FOR INFORMATION ONLY AND IS NOT AN ATTEMPT TO COLLECT THE DEBT, A DEMAND FOR PAYMENT, OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR THAT DEBT. YOU ARE NOT OBLIGATED TO DISCUSS YOUR HOME LOAN WITH THIS OFFICE OR YOUR MORTGAGE LENDER. YOU SHOULD CONSULT WITH YOUR BANKRUPTCY ATTORNEY OR OTHER ADVISOR ABOUT YOUR LEGAL RIGHTS AND OPTIONS.

Id.

Apparently, the Law Firm maintains a practice of sending a version of this letter to all consumers from whom it is attempting to collect on a mortgage loan, regardless of whether the consumer has received a bankruptcy discharge. Pl.'s SOF at 3. The Law Firm admits that "creditor or debt collection law firm is prohibited from collecting on a debt that was discharged in bankruptcy" but maintains that it "it is legally permissible to send a discharged debtor a letter claiming that the discharged debtor owes the discharged debt as long as the same letter contains a 'for informational purposes only' disclaimer." Pl.'s SOF at 6. Plaintiff testified at his deposition that the receipt of this letter caused him emotional distress and caused instability in his marriage. Dkt. 64.

Plaintiff filed suit under the Fair Debt Collection Practices Act ("FDCPA"), alleging that the Law Firm's letter contains false statements and that it attempted to collect a discharged debt. The Law Firm moved to dismiss the case, which this Court denied. The Law Firm later moved for summary judgment. While the Law Firm's motion for summary judgment was pending, the Seventh Circuit issued a series of rulings limiting standing in FDCPA cases. See Smith v. GC Servs. Ltd. P'ship, 986 F.3d 708 (7th Cir. 2021); Nettles v. Midland Funding LLC, 983 F.3d 896

3

(7th Cir. 2020); Spuhler v. State Collection Serv., Inc., 983 F.3d 282 (7th Cir. 2020); Bazile v. Fin. Sys. of Green Bay, Inc., 983 F.3d 274 (7th Cir. 2020); Gunn v. Thrasher, Buschmann & Voelkel, P.C., 982 F.3d 1069 (7th Cir. 2020); Brunett v. Convergent Outsourcing, Inc., 982 F.3d 1067 (7th Cir. 2020); Larkin v. Fin. Sys. of Green Bay, Inc., 982 F.3d 1060 (7th Cir. 2020). The Court ordered the parties to brief the standing issue to determine whether it has jurisdiction to hear this case. The parties completed that briefing on June 17, 2021. For the reasons outlined below, the Court concludes that Plaintiff does not have standing to bring this action in federal court and that this case must be dismissed accordingly.

## II.   Plaintiff lacks standing to pursue his claim in federal court.

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." TransUnion LLC v. Ramirez, No. 20-297, 2021 WL 2599472, at *6 (U.S. June 25, 2021). No harm, no foul, no standing. Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 331 (7th Cir. 2019); Pennell v. Glob. Tr. Mgmt., LLC, 990 F.3d 1041, 1045 (7th Cir. 2021); Smith, 986 F.3d at 710. To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC, 2021 WL 2599472, at *6.

The core issue in this and in many other cases brought under the FDCPA is whether Plaintiff's alleged injury is "concrete." A defendant's violation of a federal statute alone "does not cause an injury in fact; instead, the violation must have harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." Markakos v. Medicredit, Inc., 2021 WL 1937267 (7th Cir. May 14, 2021) (cleaned up). To be "concrete," an

4

"injury must be real rather than abstract—that is, it must actually exist." Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 461 (7th Cir. 2020) (cleaned up) (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)).

"'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016). Concrete, intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion" and others that have traditional, common-law roots. TransUnion LLC, 2021 WL 2599472, at *7. In addition, "Congress may identify and elevate historically non-cognizable intangible harms to the status of cognizable injuries, and when it does so, its judgment is instructive and important." Larkin, 982 F.3d at 1064 (cleaned up). In other words, courts may look to whether Congress has elevated "to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." TransUnion LLC, 2021 WL 2599472, at *7; Spokeo, Inc., 136 S. Ct. at 1549; Gadelhak, 950 F.3d at 462. However, "Congress cannot override the case-or-controversy requirement" and a plaintiff must establish a significant injury in addition to a bare violation of a statute by the defendant. Larkin, 982 F.3d at 1064; Spokeo, Inc., 136 S. Ct. 1540 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation."); Gadelhak, 950 F.3d at 462 ("...Congress cannot transform a non-injury into an injury on its say-so. . . .")

The Seventh Circuit has recently held that stress, confusion, aggravation, infuriation, disgust, annoyance, and other "purely psychological harms" do not rise to the level of a concrete

injury. Pennell, 990 F.3d at 1045 (stress, confusion, and purely psychological harms are insufficient to establish Article III standing); Markakos, 2021 WL 1937267 (aggravation, infuriation, and disgust are insufficient to establish Article III standing); Gunn, 982 F.3d at 1071 (annoyance is insufficient to establish Article III standing). Such psychological harms may result in a cognizable injury, such as when a plaintiff's confusion causes her to "pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." Markakos, 2021 WL 1937267. But alone, these limited and subjective psychological harms are insufficient to rise to the level of a concrete—and therefore cognizable—injury-in-fact.

Here, Plaintiff argues that he was injured via emotional distress and marital instability. Dkt. 64 at 1. Plaintiff claims that the false representations in the Law Firm's letter "misled Plaintiff and his wife into believing that they were still legally liable for an astronomical six-figure debt that was discharged in their bankruptcy." Id. at 3. Further, "the false representations in Defendant's Letter caused stress in his household and strained his relationship with his wife." Id. at 3-4. Plaintiff cites deposition testimony in which Plaintiff testified that the letter caused he and his wife to believe that the bankruptcy was somehow not effective, resulting in fear of being pursued with legal action, arguments with each other, crying, and difficult attempts to explain the situation to their teenage children. Id. at 4. Plaintiff describes the entire episode as one of "heartache." Id.

Plaintiff argues that these facts are sufficient to form a cognizable injury because when Congress passed the FDCPA, it found that "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692 (emphasis added). Thus, Plaintiff argues, because the Law Firm's allegedly unlawful letter caused emotional

distress and discord in his marriage and family life, "he suffered the precise harm that Congress enacted the FDCPA to eliminate." Dkt. 64 at 5. Defendant argues that Plaintiff did not allege marital discord or emotional distress in his complaint and that Plaintiff disavowed seeking damages based on any form of emotional distress during Plaintiff's deposition. Plaintiff admits that he "is not seeking recovery for emotional distress" but that "does not mean that he did not suffer a concrete injury. In other words, the relevant inquiry must focus on Plaintiff's injury and not his election of remedies." Dkt. 66 at 2.

First, Plaintiff's complaint makes no mention of martial discord, emotional distress, or any other form of injury or harm. "When courts analyze standing, allegations matter." Pennell, 990 F.3d at 1045 (cleaned up). Because the Court's "job is to decide whether plaintiffs have Article III standing to pursue the case they have presented in their complaint," Plaintiff's "operative complaint" controls. Id. Because Plaintiff's complaint fails to allege any harm other than a bare statutory violation, Plaintiff lacks standing to pursue his claim in federal court.

Second, even if Plaintiff had incorporated its allegations of marital discord and emotional distress into his complaint, he still would lack standing. Congress may have intended to reduce marital instability through the FDCPA, and Congress does have the power to elevate an intangible harm such as marital harm to the level of a cognizable injury. TransUnion LLC, 2021 WL 2599472, at *7. However, Congress cannot override the case-and-controversy requirement for Article III standing. Larkin, 982 F.3d at 1064. Plaintiff still must show that the alleged intangible injury is significant enough to qualify as "concrete." The Seventh Circuit does not recognize injuries-in-fact on account of stress, confusion, aggravation, infuriation, disgust, annoyance, or other "purely psychological harms" in the FDCPA context. Pennell, 990 F.3d at 1045; Markakos, 2021 WL 1937267 at *12; Gunn, 982 F.3d at 1071. Plaintiff's injury boils down to a claim that

7

he and his wife were stressed, confused, and upset because language in the Law Firm's letter was misleading—if not outright false. But because the Seventh Circuit has held that these harms are insufficient to form a cognizable injury, the Plaintiff lacks standing to pursue his claims in federal court. As a result, this case must be dismissed without prejudice for lack of jurisdiction.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 1, 2021